## COMMONWEALTH vs. CHARLES HINDS, JR.

Middlesex. March 5, 2002. - May 24, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Consent, Computer, Probable cause. *Probable Cause. Statute,* Construction. *Obscenity,* Child pornography.

The record of a hearing on a criminal defendant's motion to suppress evidence supported the conclusion that a police officer's entry into the residence shared by the defendant and his brother was supported by the brother's valid consent. [57-58]
A police officer's warrantless search of a criminal defendant's computer for electronic mail was supported by the defendant's consent, which was not limited to specific directories or locations on the computer [58-59]; and the officer, after observing in plain view many files whose titles suggested that they contained images of child pornography, was warranted in viewing the contents of one such file and in seizing the defendant's computer [60-62].
This court concluded that G. L. c. 272, § 29C, which prohibits the possession of child pornography in various forms of media, including "depiction by computer," includes graphic computer images stored in the form of data. [62-64]

INDICTMENTS found and returned in the Superior Court Department on June 9, 1999.

A pretrial motion to suppress evidence was heard by *Hiller B. Zobel,* J., and the cases were heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Traft* (*Rosanne Klovee* with him) for the defendant.

*Marguerite T. Grant,* Assistant District Attorney (*Lee Hettinger,* Assistant District Attorney, with her) for the Commonwealth.

SPINA, J. The defendant was charged in seven indictments with unlawful possession of child pornography. G. L. c. 272, § 29C. A Superior Court judge denied a pretrial motion to suppress images found on his personal computer. After a jury-

waived trial, the defendant was convicted as charged on all seven indictments. The defendant appealed, arguing that (1) the judge erred in denying his motion to suppress and (2) the evidence was insufficient to prove that the defendant possessed child pornography. We transferred the case here on our own motion. We affirm the convictions.

1. *Facts*. We summarize the facts found by the judge in his ruling on the defendant's motion to suppress, "supplemented by uncontroverted facts adduced at the hearing." *Commonwealth* v. *Torres*, 433 Mass. 669, 670 (2001). On October 16, 1998, the defendant's uncle, John Hinds, was arrested in connection with two homicides and an aggravated assault against other members of the defendant's family. Police from several departments were involved in the investigation. They suspected that the shootings were motivated by a family dispute regarding the sale of property at 157 Fifth Street, Cambridge (Fifth Street), where John resided. As part of an ongoing investigation, they obtained a search warrant to seize John's computer at Fifth Street to examine any electronic mail, as well as other documents related to the family dispute. State Trooper Owen J. Boyle, Detective James Dwyer of the Cambridge police, and Detective Sergeant John J. McLean of the Medford police executed the warrant on October 20, 1998.

To gain entry to Fifth Street, the police went to adjacent property at 207½ Charles Street (Charles Street), where other family members, namely, the defendant; his brother, Thomas Hinds; their father, Charles Hinds, Sr.; and their grandmother, Mary Hinds resided. There they met Thomas, who let them into the Fifth Street home. McLean, who had worked for the Attorney General's "high tech squad" and had substantial experience in the investigation of computer related crimes, secured John's computer without viewing any of its contents.

In doing so, however, McLean discovered a "category 5" cabling wire plugged into a network interface card on John's computer. Knowing that other computers attached to a network could share data with John's computer, McLean asked Thomas where the wire led. Thomas, a UNIX system administrator at Sun Micro Systems, told him that the wire led from John's computer to a "hub" connected to Thomas's and the defendant's

computers at Charles Street. The defendant, who held bachelor's and master's degrees in computer science from Boston University, had set up the network linking the computers. McLean asked Thomas for permission to search the Charles Street computers, because relevant electronic mail could readily have been stored by John on those computers as well. Boyle told Thomas that, if he did not consent, they would obtain a warrant to search the Charles Street residence. Police had thus far obtained seven search warrants in the homicide investigation, and the family had been cooperative with the investigation. McLean told Thomas that he also would need the defendant's permission before examining the defendant's computer. He emphasized that the police were looking for electronic mail evidence pertaining to the homicides.

The defendant was not at home, but Thomas was able to contact him by using a paging device. Thomas spoke with the defendant about McLean's request. The defendant told Thomas that he did not want McLean to look at his computer until he returned. Thomas allowed McLean to examine his own computer, but first activated the network "hub," absent any request from McLean, located in the defendant's bedroom. McLean then began searching Thomas's system for electronic mail while Thomas watched. Noticing a directory entitled "Chuck," McLean asked Thomas what it was. Thomas said that it was the defendant's network hard drive. McLean then asked Thomas for permission to search the "Chuck" directory from Thomas's computer. Thomas telephoned the defendant, who spoke directly with McLean. McLean identified himself and asked the defendant for permission to search his computer for electronic mail. The defendant asked, "Is that all you're looking for?" McLean said yes, and told the defendant that he could refuse, but added that a warrant could be obtained. The defendant said that he would be home in one-half hour and told McLean to go ahead, but only to look for electronic mail.

McLean then returned to Thomas's computer, where he searched the defendant's "Chuck" directory. There were no security measures in place to prevent him from doing so. Although the defendant had once installed security measures, he had removed them. McLean scrolled through the "Chuck"

directory, looking for electronic mail files, i.e., file names with "EML" or similar default extensions. Although the "Chuck" directory did not on its face disclose any files related to electronic mail, McLean observed numerous file names with the extension "JPG," which indicated that the files contained graphic images. Many of the files had sexually explicit titles, some indicating that children were possibly the subjects, including files entitled "10YRSLUT, YNGSX15, KIDSEX1, TEENSEX, 10YOANAL, and 13YRSUCK," to name a few. Of particular concern to McLean was a file entitled "2BOYS.JPG." From a prior case, McLean recognized "2BOYS.JPG" as a file name for a specific child pornography image. McLean opened the file and confirmed that "2BOYS.JPG" was child pornography. Having done so, he posted Dwyer at Thomas's computer, then went to the defendant's room and opened "2BOYS.JPG" on the defendant's computer to verify that it was the source of the file.

When the defendant arrived, McLean told him that a search of his computer had revealed child pornography. McLean seized the defendant's computer and later obtained a search warrant. A subsequent search revealed thousands of images of child pornography stored on the defendant's computer.

2. *Motion to suppress.* (a) *Issues relating to Thomas's consent.* The defendant first argues that McLean's entry into Charles Street was unlawful and that any subsequent search was therefore invalid because (1) the police lacked justification to expand the search under the warrant for Fifth Street and (2) the judge did not explicitly find that Thomas consented to McLean entering Charles Street.

"The 'judge's denial of the defendant's motion [to suppress] implies resolution of factual issues in favor of the Commonwealth.' " *Commonwealth* v. *Grandison*, 433 Mass. 135, 137 (2001), quoting *Commonwealth* v. *Lanoue*, 392 Mass. 583, 586 n.2, 588 (1984).[1] There was evidence to support valid consent by Thomas for McLean's entry into Charles Street. Mc-

---

[1]The defendant also argues that McLean's statement that he would obtain a warrant, which he contends was unjustified given the strength of the Commonwealth's evidence against John Hinds, undermined the voluntariness of Thomas's consent to search his computer at Charles Street. As the defendant

Lean testified that Thomas allowed him into Charles Street. Thomas testified, and the judge found, that he consented to a search of his own computer, which was at Charles Street, for electronic mail. Thus, even in the absence of an explicit finding that Thomas consented to McLean's entry, the judge's implied ruling to that effect was adequately supported by the record. Accordingly, the Commonwealth was not required to prove that circumstances justified an expansion of the search under the warrant for Fifth Street.

The defendant next argues that, even if Thomas consented to McLean's entry onto Charles Street and also consented to a search of his own computer for electronic mail, McLean exceeded the scope of Thomas's consent when he entered the defendant's "Chuck" directory from Thomas's computer through Thomas's network connection.

The judge concluded that because Thomas consented to a search of his own computer, and because his computer was connected to other computers on the network, Thomas's consent included consent to search all unsecured files on computers connected to the network to which Thomas had access. We need not decide this precise question because the judge also found that the defendant consented to a search of his own computer for electronic mail, and the record supports that finding.

(b) *Issues relating to the defendant's consent.* The defendant next argues, for the first time on appeal, that McLean exceeded the scope of the defendant's consent when he searched for electronic mail in the "Chuck" directory. At the motion hearing, the defendant testified that when McLean asked if he could search for electronic mail on his computer, he denied giving

acknowledges, "it is inconclusive on the question of voluntariness that the police announced their intention to seek a search warrant if consent were not forthcoming." *Commonwealth* v. *Harmond*, 376 Mass. 557, 561 (1978). See *Commonwealth* v. *Deeran*, 364 Mass. 193, 196 (1973). There was no clear error in the judge's finding that Thomas consented to the search of his computer despite McLean's announcement that he would obtain a warrant otherwise. There is ample support in the record for Thomas's consent, including evidence that he was not intimidated by the police, as he demanded identification and the opportunity to review the search warrant before admitting them to Fifth Street.

any consent because he knew that his computer contained child pornography.

In *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 178 (1980), we said:

> "What, *if any*, limitations on the consent are implied by the language or conduct of the consenting party is a question in the first instance for the judgment of the police officers to whom the consent is given. The ultimate question is whether, in light of all the circumstances, a man of reasonable caution would be warranted in the belief that some limitation was intended by the consent giver." (Emphasis added.)

There was no evidence to suggest that either the defendant or McLean understood that consent to search for electronic mail was limited to specific directories, or that any locations were off limits. The only limitation the defendant placed on the search was content based, namely, that McLean could search only for electronic mail. See *Commonwealth* v. *Sanna*, 424 Mass. 92, 98-99 (1997) (consent imposed no limitation on scope of entry into home). Once in the "Chuck" directory, McLean viewed the file names for titles that suggested they were repositories for electronic mail, such as files with "EML" or similar default extensions. Cf. *Commonwealth* v. *D'Amour*, 428 Mass. 725, 731 (1999) (officer permitted to examine letter "cursorily" to determine whether it was covered by warrant); *United States* v. *Hunter*, 13 F. Supp. 2d 574, 584 (D. Vt. 1998) ("Computer records searches are no less constitutional than searches of physical records, where innocuous documents may be scanned to ascertain their relevancy"). To say that a search for electronic mail should have been conducted without entering the "Chuck" directory would require conjecture as to how such a search could be accomplished, given the record on the motion below. On this record, the Commonwealth has demonstrated that McLean did not exceed the scope of consent in viewing the files listed in the "Chuck" directory.

As a corollary to his claim that McLean exceeded the scope of consent, the defendant argues, again for the first time on appeal, that, because consent was limited to a search for electronic mail, he reasonably believed that McLean would only look for electronic mail in a program file where sent or archived

electronic mail is typically stored.[2] In his motion to suppress, the defendant only disputed that he gave McLean consent to search his computer for electronic mail, a fact that the motion judge resolved against him. He did not challenge the scope of the search on the theory that McLean's examination of the "Chuck" directory exceeded the scope of a legitimate search for electronic mail. Moreover, the record is silent as to the workings of computers generally in this regard, and as to the defendant's computer specifically. There was no testimony or argument on this issue at the motion hearing. Accordingly, we do not address the defendant's argument on appeal because it relies on facts not in the record. See *Commonwealth* v. *Barnes*, 399 Mass. 385, 393-394 (1987).

(c) *Scope of the search.* The final question is whether Mc-Lean, while viewing the "Chuck" directory, was warranted in opening *any* files listed therein and in seizing the defendant's computer. The defendant argues that the judge erred in ruling that McLean could open *any* files because electronic mail might be hidden in them.

McLean had testified that electronic mail might be stored anywhere in a computer system, either with an obvious default extension indicating electronic mail, such as "EML," or with an extension created by the user that disguises the source. The defendant concedes the point, but contends that (1) there was no reason to believe any file had been disguised, and (2) the judge's

[2]Whether less intrusive means were available to search the defendant's computer was never raised below, leaving the record entirely undeveloped as to what extent the search could be limited, and more importantly, to what extent the defendant or McLean understood that a search for electronic mail would be undertaken without viewing the "Chuck" directory in the circumstances of this case. Cf. *United States* v. *Campos*, 221 F.3d 1143, 1148 (10th Cir. 2000) (court did not consider whether computer search was excessive under warrant because defendant offered no evidence as to methods officers employed in searching through his computer files). The evidence does not disclose whether McLean may have been able to conduct a search that revealed only electronic mail or electronic mail related files even if they were stored in diverse areas. See, e.g., Federal Guidelines for Searching and Seizing Computers, 56 Crim. L. Rep. (BNA) 2023, 2037 (1994) (discussing search minimization techniques, including employment of "utilities" software "to look for specified names, dates, and file extensions"), superseded by Search and Seizure Manual, United States Department of Justice, Computer Crime and Intellectual Property Section, 2001, Step 3, paragraph ninth.

ruling would permit an unlimited search for electronic mail and is thus inconsistent with a separate finding that the search was limited in scope. We need not decide this question because Mc-Lean did not open files on a wholesale basis to look for electronic mail. He scrolled the "Chuck" directory looking for files with an "EML" or similar name extension. He opened only one file, the "2BOYS.JPG" file, after noticing many files in plain view on the "Chuck" directory whose titles suggested that they contained images of child pornography.

McLean was not obligated to disregard files listed in plain view on the "Chuck" directory whose titles suggested contents that were contraband. See *Commonwealth* v. *Viriyahiranpai-boon*, 412 Mass. 224, 228 (1992), and cases cited (items observed by police during consent search are subject to plain view doctrine). Indeed, McLean testified that he opened the "2BOYS.JPG" file because he recognized it as a title for child pornography, not because he thought it might contain electronic mail. "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Commonwealth* v. *D'Amour*, *supra* at 730-731.[3] Mc-Lean "had 'a right to be where he was, looking at what he was looking at, when he came across' " the file names in the defendant's "Chuck" directory, including the "2BOYS.JPG" file. *Id.* at 731, quoting *United States* v. *Rutkowski*, 877 F.2d 139, 141 (1st Cir. 1989).

The defendant argues that the titles to the documents, in any event, did not create probable cause to believe that their contents contained illegal subject matter. We disagree. McLean had substantial experience with computer crimes and had worked for the Attorney General's "high tech squad." He had seen the "2BOYS.JPG" file in a prior computer case involving child pornography. Cf. *Commonwealth* v. *Figueroa*, 412 Mass. 745,

---

[3]We also require inadvertence under the plain view doctrine. See *Commonwealth* v. *Balicki*, 436 Mass. 1, 9 (2002) (retaining inadvertence requirement under art. 14 of Massachusetts Declaration of Rights). There is no contention that McLean's discovery of the "2BOYS.JPG" file in this case was not inadvertent.

751 (1992) (probable cause to seize brown paper bag wrapped inside plastic bag found partially concealed in rear window wall panel of defendant's car supported in part by trooper's previous experience of discovering illegal drugs similarly packaged and placed). The "2BOYS.JPG" file was listed in a directory littered with sexually explicit graphic file names indicating children as possible subjects. These facts, considered together, warranted McLean in believing that "2BOYS.JPG" was child pornography and that other files in the "Chuck" directory contained similar matter.[4] McLean did not search any files in addition to the "2BOYS.JPG" file until a warrant was secured.

Having discovered illegal files on the defendant's computer, it was reasonable for McLean, who was already inside Charles Street, to seize the computer prior to obtaining a warrant because, by nature, computer data are not readily separable from the hard drive and McLean was faced with the prospect of their destruction. The alternative, posting an officer at the defendant's computer in addition to the officer already guarding Thomas's computer while a warrant was secured, would have been more intrusive to the defendant's and his family's privacy rights than simply to secure the defendant's hard drive and keyboard. See *Commonwealth* v. *A Juvenile (No. 2)*, 411 Mass. 157, 165 (1991). As the motion judge concluded, and the defendant does not challenge, the risk that computer data could be easily deleted and thus lost justified seizing the defendant's hard drive until such time as McLean could obtain a warrant. See *Commonwealth* v. *Huffman*, 385 Mass. 122, 126 (1982) (exigency exists where there is reasonable basis to conclude that evidence will be destroyed or removed before police can obtain search warrant). The judge properly denied the defendant's motion to suppress.

3. *Sufficiency of the evidence.* The defendant argues that the Commonwealth failed to prove that he violated G. L. c. 272,

---

[4]Although the defendant does not raise the issue, we note briefly that once probable cause arose, McLean was warranted in opening the "2BOYS.JPG" on Thomas's computer and then on the defendant's to confirm that it was, indeed, child pornography and was located on the defendant's computer, as the defendant had no reasonable expectation of privacy in what was lawfully viewed and what appeared to be contraband. See *Commonwealth* v. *Varney*, 391 Mass. 34, 39 (1984).

§ 29C, which prohibits the possession of child pornography in various forms of media, including "depiction by computer."[5] He contends that "depiction," as that term is used in § 29C, does not include an unopened file on a hard drive, but only a file that is reduced to a hard copy, or one that is disseminated. The defendant did not raise this issue below, but we review because "findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice." *Commonwealth* v. *Grandison*, 433 Mass. 135, 140 n.8 (2001), quoting *Commonwealth* v. *McGovern*, 397 Mass. 863, 867 (1986).

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Commonwealth* v. *Smith*, 431 Mass. 417, 421 (2000), quoting *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). The defendant urges an interpretation of G. L. c. 272, § 29C, that would render the phrase "or depiction by computer" surplusage. See *Commonwealth* v. *Campbell*, 415 Mass. 697, 698-699 (1993). Contrary to the defendant's assertion that the statute refers only to physically tangible items when it lists "a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction," "depiction by computer" is listed as a separate and distinct category, thereby indicating that the phrase was not intended to be "restricted to elements similar to the specific elements listed" as visual reproductions. *Commonwealth* v. *O'Keefe*, 48 Mass. App. Ct. 566, 569-570 (2000). Rather, the Legislature's creation of a separate and distinct category for "depiction by computer" manifests an intent to give special treatment to the unique issues presented by comput-

[5]General Laws c. 272, § 29C, states: "Whoever knowingly purchases or possesses a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction, or depiction by computer, of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such child is [engaged in or subjected to sexual acts as provided in (i)-(vii)]; with knowledge of the nature or content thereof shall be punished . . . ."

ers, including the fact that stored data, although intangible in their unprocessed form, are readily transferrable to a graphic image. Our reading comports with the Legislature's expressed design to eliminate permanent records of sexually exploitive material harmful to children. See St. 1997, c. 181, § 2. As such, "depiction by computer" includes graphic computer images stored in the form of data. That the defendant did not disseminate any images is of no consequence, because he was charged under the possession provision of G. L. c. 272.

*Judgments affirmed.*