## CHRISTOPHER PERRY *vs.* COMMONWEALTH.

Suffolk. November 4, 2002. - December 18, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Statute,* Construction. *Obscenity,* Child pornography. *Words,* "Visual material."

This court concluded that the term "[v]isual material," as defined in G. L. c. 272, § 31, encompassed computer images for purposes of a prosecution for dissemination, or possession with intent to disseminate, what is commonly called "child pornography" in accordance with G. L. c. 272, § 29B (*a*) and (*b*). [283-288]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 22, 2001.

The case was reported by *Cowin,* J.

*Richard J. Fallon* for the plaintiff.

*William J. Meade,* Assistant Attorney General (*Julie B. Ross,* Assistant Attorney General, with him) for the Commonwealth.

*Timothy J. Cruz,* District Attorney, *& Mary Lee,* Assistant District Attorney, for the District Attorney for the Plymouth District, amicus curiae, submitted a brief.

COWIN, J. In this case, we are asked to decide whether the term "[v]isual material," as defined in G. L. c. 272, § 31, encompasses computer images for purposes of a prosecution for dissemination, or possession with intent to disseminate, what is commonly called "child pornography." G. L. c. 272, § 29B (*a*) and (*b*). We hold that it does, and affirm the order of the Superior Court denying Christopher Perry's (defendant's) motion to dismiss.

1. *Facts.* The matter is before us on a reservation and report of a single justice of this court. The parties have agreed to the following facts "for the purpose of this reservation and report and no other purpose." In October, 1998, State police assigned to the office of the Attorney General executed a search warrant

at the defendant's New Bedford home. Stored in the defendant's computer, which was seized, the police found more than 200 images of nude and partially nude early teenage or preteenage girls, and some nude boys. The focus of many of the images was on the children's genitalia.

This search was a result of a nationwide investigation coordinated by the office of the New York State Attorney General (NYSAG), whose undercover investigators sought to dismantle an online organization known as "Pedo University." This organization postured itself as a university and used "news-groups"[1] to "post" and distribute child pornography. The organization's members held positions within the "university" as faculty and staff. The defendant called himself "Director of Pubic Hygiene" at Pedo University. NYSAG investigators linked the defendant to over seventeen "postings" (see note 1, *supra*) of child pornography from June to August, 1998.

A grand jury indicted the defendant on charges of dissemination of "visual material" of a child in a state of nudity, G. L. c. 272, § 29B (*a*), and possession with intent to disseminate "visual material" of a child in a state of nudity and in a state of sexual conduct, G. L. c. 272, § 29B (*a*) and (*b*). The acts are alleged to have occurred on divers dates in 1998. The defendant moved to dismiss these indictments,[2] see *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982), asserting that computer images were not "visual material" within the meaning of the statute. A judge in the Superior Court denied the motion. The defendant sought relief in the county court pursuant to G. L. c. 211, § 3, and the single justice reserved and reported the case without decision.

2. *Discussion.* General Laws c. 272, § 29B (*a*), provides, in relevant part:

---

[1] The parties agree that "[a] newsgroup on the Internet is a vehicle for computer users to meet on the Internet for the purpose of posting messages relating to common interests. In addition to posting messages, a news group user can attach computer files, including, but not limited to, graphic image files." The testimony before the grand jury indicated that a "posting" to a newsgroup is similar to pinning messages on a conventional notice board, with the obvious difference that the "postings" are electronic.

[2] The defendant was also indicted for knowing possession of child pornography, G. L. c. 292, § 29C, but his motion to dismiss did not challenge this indictment.

"Whoever, with lascivious intent, disseminates any *visual material* that contains a representation or reproduction of any posture or exhibition in a state of nudity involving the use of a child who is under eighteen years of age, knowing the contents of such visual material or having sufficient facts in his possession to have knowledge of the contents thereof, or has in his possession any such visual material knowing the contents or having sufficient facts in his possession to have knowledge of the contents thereof, with the intent to disseminate the same, shall be punished . . ." (emphasis added).

General Laws c. 272, § 29B (*b*), provides, in relevant part:

"Whoever with lascivious intent disseminates any *visual material* that contains a representation or reproduction of any act that depicts, describes, or represents sexual conduct participated or engaged in by a child who is under eighteen years of age, knowing the contents of such visual material or having sufficient facts in his possession to have knowledge of the contents thereof, or whoever has in his possession any such visual material knowing the contents or having sufficient facts in his possession to have knowledge of the contents thereof, with the intent to disseminate the same, shall be punished . . ." (emphasis added).

At the time of the charged offenses,[3] the Legislature defined "visual material" in G. L. c. 272, § 31, as:

"any motion picture film, picture, photograph, videotape, any book, magazine, or pamphlet that contains pictures, photographs or similar visual representations or reproductions. Undeveloped photographs, pictures, motion picture films, videotapes and similar visual representations or reproductions may be visual materials notwithstanding that processing, development or similar acts may be required to make the contents thereof apparent."

We conclude that the statutory definition of "visual material" includes the computer images that underlie the defendant's indictments. Statutory language is given effect consistent with

---

[3]We discuss the recent amendment to the statute, *infra.*

its plain meaning and the intent of the Legislature. See, e.g., *Chandler* v. *County Comm'rs of Nantucket County*, 437 Mass. 430, 435 (2002); *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). The scope of §§ 29B and 31 reflect the Legislature's obvious intent to include any visual image created by use of a camera or similar device, regardless of how or where the image is stored. This is clear from the plain language of the statute, interpreted in a commonsense manner.

The Legislature labeled the prohibited class "visual material," a broad term. It included within the definition of "visual material" any photograph. The phrase *"any . . .* photograph" means what it says, any photograph without limitation. A "photograph" is "a picture, image, or likeness obtained by photography." Webster's Third New Int'l Dictionary 1702 (1993). See American Heritage Dictionary 987 (1970) (photograph is "[a]n image . . . recorded by a camera and reproduced on a photosensitive surface"). In modern parlance, an image produced by a digital camera is considered "photography," i.e., it is "characterized by great truth of representation or minute detail in reproduction." Webster's Third New Int'l Dictionary, *supra.* It matters not that the scene is captured in bytes rather than on conventional film. See American Heritage Dictionary 507 (4th ed. 2000) ("digital photography"). The comment of Justice Holmes in *Towne* v. *Eisner*, 245 U.S. 418, 425 (1918), is applicable here: A "word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Auditor of the Commonwealth* v. *Trustees of Boston Elevated Ry.*, 312 Mass. 74, 76 (1942).

Any lingering doubt whether § 31 included computer images of the type at issue here is dispelled by the use of the word "picture" and the context of the remainder of the section. This convinces us that the Legislature intended the section to reach images produced by any method of photography: conventional, "instant," electronic, digital, or some means as yet not invented. Because § 31 includes visual material even if undeveloped and even if it requires some sort of processing in order to be developed, the means used to store or display the visual material are of no relevance. The bytes of a computer image can be

likened to conventional negatives. The Legislature was unconcerned with how the photographically created image is stored or communicated. So, too, it would not matter to the child whose humiliation is captured and permanently preserved on the Internet that the image is digital rather than conventional; indeed, this same permanence and the ease of transmission make the activity all the more pernicious for such a child. Cf. *Davis* v. *State*, 916 P.2d 251, 257-258 (Okla. Crim. App. 1996) (CD-ROM discs contained "photographic product[s]" within meaning of obscenity statute); *People* v. *Fraser*, 264 A.D.2d 105, 110-111 (N.Y. 2000), aff'd, 96 N.Y.2d 318, cert. denied, 533 U.S. 951 (2001) (computer-stored images just as harmful as conventional photograph, and perhaps more so).[4]

The defendant seeks support from G. L. c. 272, § 29C, inserted by St. 1997, c. 181, § 2, which prohibits the knowing purchase or possession of child pornography. That statute specifically lists "depiction by computer" among the enumerated contraband. The defendant contends that the Legislature's failure to amend § 31 similarly to include the term "depiction by computer" evidences an intent that § 31 not include such material. We do not agree. Section 29C has its own terms, to which the definitions of § 31 do not apply. In other words, "the use of the term 'depiction by computer' [in § 29C] adds a meaning unnecessary" in the context of § 31. *Commonwealth* v. *Washburn*, 55 Mass. App. Ct. 493, 496 n.3 (2002). Cf. *Commonwealth* v. *Hinds*, 437 Mass. 54, 62-64 (2002). If anything, the legislative "findings" that accompanied the enactment of § 29C indicate that the Legislature did not place any significance on the distinction.[5] It is absurd to believe that the Legislature intended that computer-stored child pornography

---

[4]The computer images at issue here were produced using actual children, and are not so-called "virtual child pornography." *Attorney Gen.* v. *Free Speech Coalition*, 535 U.S. 234, 241 (2002). The officer testifying before the grand jury stated that the images on the defendant's computer were either conventional photographs "scanned" into the computer or were images taken with a digital camera.

[5]The findings stated in relevant part:

"The general court hereby finds: (1) that the sexual exploitation of children constitutes a wrongful invasion of a child's right to privacy and results in social, developmental and emotional injury to such child

could not be purchased or possessed but could be disseminated freely.[6]

Similarly, the 1988 amendment to § 31, which added the word "videotape" to the definition of "[v]isual material," changes nothing. St. 1988, c. 226, § 8. Given the clear legislative intent in the statute as originally enacted, the 1988 amendment was a clarification. We do not read into that amendment an intent to update, or the necessity of updating, the wording of the statute each time new technology emerges. To hold otherwise would allow child pornographers to evade prosecution simply by upgrading the technology employed.[7] Cf. *Globe Newspaper Co.* v. *Beacon Hill Architectural Comm'n*, 421 Mass. 570, 580-581 (1996) (usage in statute clarification); *Com-*

and that to protect children from sexual exploitation it is necessary to prohibit the production of material which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce; (2) that the mere possession or control of any sexually exploitative material results in continuing victimization of children as such material is a permanent record of an act or acts of sexual abuse or exploitation of a child and that each time such material is viewed the child is harmed; (3) that such material is used to break the will and resistance of other children so as to encourage them to participate in similar acts; (4) that laws banning the production and distribution of such material are insufficient to halt this abuse and exploitation; (5) that to stop the sexual abuse and exploitation of children, it is necessary to ban the possession of any sexually exploitative materials; and (6) that the commonwealth has a compelling interest in outlawing the possession of any materials which sexually exploit children in order to protect the privacy, health and emotional welfare of children and society as a whole." St. 1997, c. 181, § 1.

[6]The defendant argues that the concerns we discussed pursuant to the First Amendment to the United States Constitution in *Commonwealth* v. *Oakes*, 407 Mass. 92, 97 (1990), are the reason the Legislature omitted computer images from § 31. What the defendant ignores is that the free speech concerns do not change with the medium of the image. An image on a computer is not entitled to greater First Amendment protection than one in conventional format.

[7]The 1988 amendment originated in a bill filed April 6, 1988, by Governor Michael S. Dukakis, developed by him, the Attorney General, and the Massachusetts District Attorneys Association. The message from the Governor speaks of the problem of "[t]he creation and dissemination of sexually explicit photographs, videotapes and the like . . . ." 1988 House Doc. No. 5555. The definition of "[v]isual material" that was enacted in 1988 is identical to that proposed by the Governor.

*monwealth* v. *Hughes*, 364 Mass. 426, 430 n.4 (1973) (same).[8]

Our conclusion is also unchanged by the recent amendment to § 31 itself. In 2002, the Legislature added "depiction by computer" to the definition of "[v]isual material," which is now defined as:

> "any motion picture film, picture, photograph, videotape, book, magazine, pamphlet that contains pictures, photographs or similar visual representations or reproductions, or depiction by computer. Undeveloped photographs, pictures, motion picture films, videotapes and similar visual representations or reproductions may be visual materials notwithstanding that processing, development or similar acts may be required to make the contents thereof apparent." St. 2002, c. 161, § 2.

By inserting "depiction by computer," the Legislature reaffirmed what was already evident. The statute, before the recent amendment, was broad enough to encompass the computer images here at issue. The fact that the Legislature revised the statute to include a specific reference to a particular technological advance does not mean that such material was not embraced by the prior statutory language. Statutory changes must be interpreted in context. In the present context, the 2002 amendment was not an effort to expand previously narrower coverage, but was instead an effort to modernize the language to keep it current with today's technology.

We conclude that the statute is clear and any ambiguity the defendant suggests lacks support. The rule of lenity does not apply. An ordinary person reading the statute would not be surprised to learn that dissemination of computer-stored images depicting child pornography is a criminal offense.

---

[8]The case of *Commonwealth* v. *Richards*, 426 Mass. 689 (1998), on which the defendant relies, is inapposite. There, we held that the statute penalizing annoying telephone calls, G. L. c. 269, § 14A, did not apply to the sending of annoying facsimile transmissions over telephone lines. *Id.* at 691. We expressly relied on the plain language of the statute, in which "the word 'telephone' is used as a verb, not as a noun." *Id.* at 690. We said that to "telephone" means "to place a telephone call that might result in an oral communication," which is materially different from sending a document by facsimile transmission. *Id.* Here, in contrast, the plain language of the statute *does* encompass computer images.

3. The case is remanded to the county court for entry of a judgment affirming the decision of the Superior Court.

*So ordered.*