## Commonwealth vs. Kenneth Hall.

No. 09-P-1030.

Suffolk. January 18, 2011. - September 1, 2011.

Present: Lenk, Graham, & Fecteau, JJ.[1]

*Enticement of Minor. Obscenity,* Child pornography. *Practice, Criminal,* Required finding. *Evidence,* Photograph, Telephone bill. *Telephone.*

At the trial of indictments charging, inter alia, enticement of a child with the intent to pose the child in a state of nudity, in violation of G. L. c. 265, § 26C, there was insufficient evidence to support the element of the offense that the defendant lured the child to enter, exit, or remain within any vehicle, dwelling, building, or other outdoor space, where, although modern electronic and digital technology do not require a defendant and a victim to be in the same place for the perpetration of such an offense to take place, the victim was enticed to take photographs of herself in a place of her own choosing; and where the statute's requirement that the enticement be to a specific location chosen by the defendant preserves the offense's distinction from the offense of posing a child, G. L. c. 272, § 29A. [321-325]
This court concluded that there was no merit to a criminal defendant's contention that images on a cellular telephone were not intended to come within the forms of media prohibited by G. L. c. 272, § 29C, as child pornography. [325-327]
At the trial of an indictments charging, inter alia, possession of child pornography, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that the defendant received and viewed digital images of the victim's partially clothed body when they were transmitted to his cellular telephone, notwithstanding that they were not present on the cellular telephone at the time of his arrest. [327-330]

Indictments found and returned in the Superior Court Department on December 21, 2004.

The cases were tried before *Patrick F. Brady,* J.

*Robert A. O'Meara* for the defendant.

*Teresa K. Anderson,* Assistant District Attorney, for the Commonwealth.

[1]Justice Lenk participated in the deliberation on this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

FECTEAU, J. The defendant appeals from convictions, after a jury trial in Superior Court, of enticement of a child, G. L. c. 265, § 26C; posing a child in a state of nudity, G. L. c. 272, § 29A; and possession of child pornography, G. L. c. 272, § 29C.[2] He complains that the judge erred in denying his motion for a required finding of not guilty on the indictment charging enticement of a child because the evidence was insufficient that the defendant, with the intent to commit one of the enumerated offenses, had enticed the child to enter or exit or remain within a vehicle, building, dwelling, or other outdoor space. In the alternative, he contends that the crime of enticement of a child under the provisions of G. L. c. 265, § 26C, in connection with the specific intent with which he was charged in the indictment (to violate G. L. c. 272, § 29A) is duplicative of the offense of posing a child in a state of nudity. Secondly, he complains that the evidence was insufficient to prove that he possessed child pornography because the statute, G. L. c. 272, § 29A, does not specifically prohibit images taken on a cellular telephone (cell phone) camera and that the evidence was insufficient to prove that he actually possessed the images. He also contends that he was prejudiced by the introduction of a videographic image of the victim at about the time of the events in question,[3] and that the introduction of a certificate of drug analysis without having the opportunity for cross-examination of the analyst who created it was a violation of his right of confrontation under the Sixth Amendment to the United States Constitution.[4] We affirm in part and reverse in part.

---

[2]The defendant was also convicted of possession of marijuana. That indictment was placed on file with the defendant's consent. The defendant was acquitted by the jury on two counts of indecent assault and battery on a child under the age of fourteen years.

[3]This claim is without merit as there were three charges as to which the Commonwealth was required to prove that the defendant knew or should have known that the victim was a child under fourteen years of age, and the photographic image was relevant to that element of the offenses. See *Commonwealth* v. *O'Connell*, 432 Mass. 657, 662-663 (2000); *Commonwealth* v. *Wright*, 60 Mass. App. Ct. 108, 111-112 (2003).

[4]As the indictment charging possession of marijuana was placed on file with the defendant's consent after the verdict of guilty, his right of appeal is suspended until a sentence is imposed, absent exceptional circumstances which are not present here, such as if the particular error claimed was relevant also to the other charges on appeal. See *Commonwealth* v. *Molligi*, 70 Mass. App. Ct. 108, 109-110 (2007).

1. *Background.* The Commonwealth's evidence included the following facts. During the summer of 2003, the defendant met the victim, an eleven year old girl whom we shall call Mary,[5] while she walked towards Spencer Street in the Dorchester section of Boston with her cousin; the defendant was across the street walking his dog. The defendant lived on Spencer Street with his wife. The defendant told Mary that his dog was pregnant and would be having puppies. Later, Mary again saw the defendant, who told her that the dog had had the puppies, whereupon Mary asked if she could have one. After learning that Mary's mother did not want her to bring a dog home, the defendant said that she could pick out one of the puppies at his house but that the puppy would stay at the defendant's house and the victim could visit it there. Thereafter, the victim went to the defendant's house and picked out a puppy.

Throughout the summer of 2003 and into February, 2004, Mary went to the defendant's house to visit the puppy and spent time with the defendant, sometimes alone and sometimes with her brother or her niece.

When the defendant and Mary were alone together in his room,[6] the defendant would ask her if he could see her underwear and if he could touch her. She did not immediately assent, and the defendant would say "please" and offered to buy her things, like clothes and shoes. Additionally, the defendant showed Mary underwear that belonged to another girl whom she knew. Eventually, Mary agreed to show the defendant her underwear, and she pulled down her pants. The defendant also asked to see her buttocks and "private," which she showed him by pulling down her pants and taking her underwear partly off.

The defendant gave Mary a total of three cell phones (she had lost one and broken another), a television, and a DVD player. He bought two of the cell phones while the victim lived with her mother and then another after she was placed in foster care beginning in February, 2004.[7]

---

[5]We continue the use of the pseudonym utilized by the parties in their briefs. See G. L. c. 265, § 24C.

[6]There was evidence that the defendant and his wife used separate bedrooms.

[7]On February 18, 2004, the Department of Social Services (DSS) removed the victim and her three siblings from their mother's custody. Mary and one sister were placed together in a foster home in the Hyde Park section of Boston, where their foster mother and her four children resided.

A Department of Social Services[8] (DSS) social worker assigned to the victim and her siblings supervised the visits between Mary and her mother at the DSS office. On at least four occasions, the defendant also attended these visits, until DSS determined that he should no longer be allowed to do so. Thereafter, the social worker told the defendant and Mary's mother that the defendant would no longer be allowed to visit, but he still came to the DSS office on at least two or three more occasions. The mother did not accept this decision well, arguing with the social worker and telling her, in effect, that the defendant provided her much needed assistance.

During another visit, Mary saw the defendant outside the DSS office seated in his car. By this point, she had broken her second cell phone, and the defendant had told her that he was going to give her a new telephone. He showed her the cell phone, held it in his hand, and told her that she would get this cell phone in a Burger King bag, which Mary's mother gave her during their later visit inside the DSS office.

Once the victim received the new cell phone, the defendant called and sent text messages to her from his cell phone. The defendant asked the victim to send him pictures of her body — specifically, pictures of her "butt and private" — and the defendant offered to get her clothes, shoes, and "stuff." The victim took pictures of her buttocks and vagina and sent them to the defendant's cell phone. The defendant asked the victim for a picture of her underwear, and she complied. The defendant also asked the victim to send him pictures of a foster sister; although she took one such picture, that foster sister refused to allow Mary to send it, and she did not. The victim did not tell anyone about the pictures, as she was scared and she did not want anyone to know, describing it as "nasty."

Between June 9 and July 6, 2004, she took twenty-eight pictures of herself with the cell phone camera and sent them to the defendant's cell phone. After four such pictures were sent on June 9, 2004, the defendant responded with a text message that said, "You are killing me, send one more til later." During this period, the defendant sent pictures to Mary, via cell phone, of "your dog." A few weeks before July 6, another of her foster

[8]Now known as the Department of Children and Families.

sisters saw Mary with a cell phone and told her that her mom did not allow the foster children to have cell phones, whereupon Mary gave the telephone to the other girl.

The defendant called and sent text messages to Mary's cell phone (now in the possession of the foster sister), which came at all hours, including late at night (from 2:00 A.M. to 4:00 A.M.), all being sent from the same telephone number. Mary's foster sister also saw text messages about buying things. Ultimately, this foster sister confronted Mary over the content of the text messages, and her foster mother learned what the victim had been doing at the defendant's request and reported it to police, who began their investigation. Among the text messages seen by the foster mother on Mary's cell phone was one asking Mary to send photographs of her underwear and "butt." Boston police Detective Munroe took the victim's cell phone. Among items seized by police during the execution of a search warrant at the defendant's residence was a Nokia cell phone from the bed in the defendant's room. In addition, a small bag of marijuana was seized from a nightstand in that room.

2. *Discussion.* A. *Sufficiency of evidence of child enticement.* The defendant contends that the judge erred in denying his motion for a required finding of not guilty on the charge of enticement of a child because there was insufficient evidence that the defendant enticed the child "to enter, exit or remain within [a] vehicle, dwelling, building, or other outdoor space with the intent that he or another person will violate [certain enumerated statutes]." G. L. c. 265, § 26C, inserted by St. 2002, c. 385, § 3.[9] Specifically, the defendant complains that there was no evidence that he intended to lure Mary into entering, exiting, or remaining in a particular vehicle, dwelling, building, or outdoor space. In making this contention, the defendant points to cases where victims have been asked to enter cars or trucks or to perform sexual acts outdoors. See *Commonwealth* v. *Disler*, 451 Mass. 216, 220 (2008) (*Disler*) (during "sting" operation, defendant asked undercover police officer, over the Internet, to meet him in his automobile); *Commonwealth* v. *Filopoulos*, 451 Mass. 234, 235 (2008) (defendant lured victim into his vehicle); *Com-*

---

[9]We note that the defendant does not contend that there was insufficient evidence of "enticement" or of his intent to commit one of the offenses enumerated in the statute.

monwealth v. *Federico*, 70 Mass. App. Ct. 711, 712-713, 718 (2007) (defendant, beneath victim's bedroom window, asked complainant to come outside to perform sex act); *Commonwealth* v. *LaPlante*, 73 Mass. App. Ct. 199, 200-201 (2008) (defendant asked if victim wanted a ride in his truck).

The crime of child enticement "has four elements: (1) 'Any one who entices,' (2) 'a child under the age of 16, or someone he believes to be a child under the age of 16,' (3) 'to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space,' (4) 'with the intent that he or another person will violate [one of the statutes enumerated above] . . . or any offense that has as an element the use or attempted use of force.' "[10] *Commonwealth* v. *LaPlante*, 73 Mass. App. Ct. 199, 202 (2008), quoting from G. L. c. 265, § 26C. The defendant was accused and convicted specifically of having enticed a child with the intent to pose the child in a state of nudity (a violation of G. L. c. 272, § 29A[a],[11] one of the offenses enumerated in the statute).

[10]The child enticement statute, G. L. c. 265, § 26C, inserted by St. 2002, c. 385, § 3, provided at the time of these incidents as follows:

"(*a*) As used in this section, the term 'entice' shall mean to lure, induce, persuade, tempt, incite, solicit, coax or invite.

"(*b*) Any one who entices a child under the age of 16, or someone he believes to be a child under the age of 16, to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space with the intent that he or another person will violate section 13B, 13F, 13H, 22, 22A, 23, 24 or 24B of chapter 265, section 4A, 16, 28, 29, 29A, 29B, 29C, 35A, 53 or 53A of chapter 272, or any offense that has as an element the use or attempted use of force, shall be punished by imprisonment in the state prison for not more than 5 years, or in the house of correction for not more than 2 ½ years, or by both imprisonment and a fine of not more than $5,000."

[11]General Laws c. 272, § 29A(*a*), as appearing in St. 1988, c. 226, § 1, provides: "Whoever, either with knowledge that a person is a child under eighteen years of age or while in possession of such facts that he should have reason to know that such person is a child under eighteen years of age, and with lascivious intent, hires, coerces, solicits or entices, employs, procures, uses, causes, encourages, or knowingly permits such child to pose or be exhibited in a state of nudity, for the purpose of representation or reproduction in any visual material, shall be punished by imprisonment in the state prison for a term of not less than ten nor more than twenty years, or by a fine of not less than ten thousand nor more than fifty thousand dollars, or by both such fine and imprisonment."

In its opposition, the Commonwealth contends that this element may be satisfied by evidence showing an intent to lure the victim to "virtually any place." It relies on evidence showing that the defendant, with the help of Mary's mother, transferred a cell phone to Mary via a Burger King bag, from which it infers that the defendant intended and expected that the victim would take the cell phone to her foster home. Once the phone was in Mary's possession, the defendant used his cell phone to call her on the phone he gave her and offered her "clothes and stuff," requesting that she photograph her "butt and private" and send the pictures to him. Clearly, such evidence was sufficient to show that the defendant had the lascivious intent to lure the victim to pose privately in a state of nudity. It is now true that, by means of modern digital and telephonic technology, a defendant also need not be physically present in order to achieve an intended purpose of obtaining illicit photographs.[12] Moreover, as pointed out by *Commonwealth* v. *Disler*, 451 Mass. at 220-221, in order to constitute enticement of a victim, the defendant need not physically meet the victim at the same place to which he entices the victim to go. "There is nothing in the language of either subsection (*a*) or subsection (*b*) [of G. L. c. 265, § 26C,] that supports the defendant's contention that, in addition [to enticement to a particular location], there must be an overt act in order for the crime of child enticement to occur." *Disler, supra* at 221-223 (court disagreed with defendant's contention that "the statute requires something more [than sending words over the Internet], i.e., an overt act such as traveling to an agreed rendevous location").[13] The crime of posing a child in a state of nudity is one of the offenses enumerated in the enticement statute for

---

[12]In a case that involved interpretation of the terms "visual representation[] or reproduction[]," included in the definition in G. L. c. 272, § 31, of "visual material," and "depiction by computer" (not included in the statute at issue in that case) as they related to a prosecution under G. L. c. 272, § 29B, for possession of child pornography, the Supreme Judicial Court suggested that the broadly phrased terms of the statute are to be interpreted and applied to modern technology. *Perry* v. *Commonwealth*, 438 Mass. 282, 283-288 (2002). "To hold otherwise would allow child pornographers to evade prosecution simply by upgrading the technology employed." *Id.* at 287.

[13]We find instructive the court's discussion in *Commonwealth* v. *Disler, supra*, concerning the use of the Internet for such enticement: "If this were done over the Internet and the Internet communications themselves were not suf-

which actual physical contact between a defendant and a victim is not necessarily required in order for the offense to occur; it necessarily follows that, given modern electronic and digital technology, the perpetration of such an offense does not require a defendant and a victim to be in the same place.

However, no appellate case has yet to hold that a prosecution for child enticement under G. L. c. 265, § 26C, may rest on facts similar to those present here wherein an allegation of child enticement does not involve enticement to a particular location, chosen by a defendant, at which, presumably, he was to meet the victim. Indeed, we are reluctant to extend the reach of this statute to the conduct in question here, for two reasons. First, to allow the statute to be applied to the facts here, in which the victim was enticed to take nude photographs of herself in a place of her own choosing, would render meaningless the element of the offense requiring proof that the child was enticed "to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space." G. L. c. 265, § 26C. Second, given that the offense of posing a child in a state of nudity (G. L. c. 272, § 29A, of which the defendant was also convicted) is intended to protect children against such activity as occurred here, we consider that a primary purpose of the child enticement statute (G. L. c. 265, § 26C) is to provide further protection for children against the risks of danger or harm that lurk when a child is lured to a place chosen and potentially controlled by a predator. The interpretation of G. L. c. 265, § 26C, which the prosecution urges us to adopt would also cause the offense of "child enticement" to have little or no difference from the crime that the defendant was alleged to have intended, namely, of posing a child in a state of nudity. Indeed, the defendant's alternative contention is that the interpretation suggested by the Commonwealth would render his conviction under the child enticement statute, G. L. c. 265, § 26C, potentially duplicative of the indexed offense of posing a child in a state of nudity, G. L. c. 272, § 29A, since the latter statute also contains as an

ficient to demonstrate the statutorily required criminal intent, the Commonwealth, in order to obtain a conviction under the child enticement statute, would then obviously need to demonstrate the adult's criminal intent with evidence beyond the mere words of the Internet messages." *Id.* at 225 n.13.

element the luring or enticing of the child for the intended purpose of posing the child. Interpreting the crime of child enticement, G. L. c. 265, § 26C, so as to require, as an element thereof, that the enticement be to a specific location chosen by the defendant serves to give meaning to the element included in c. 265, § 26C (but not in G. L. c. 272, § 29A[a]), and preserves the offense's distinction from the offense of posing a child, G. L. c. 272, § 29A. We thus conclude that, because there was insufficient evidence to support the element that the defendant lured the child "to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space,"[14] G. L. c. 265, § 26C, it was error to deny the defendant's motion for a required finding of not guilty as to the offense of child enticement. Consequently, the verdict must be set aside and a judgment for the defendant entered on this indictment.

B. *Possession of child pornography.* (1) *Applicability of statute to cell phone camera images.* The defendant contends that the images on the cell phone were not intended to come within the forms of media prohibited by G. L. c. 272, § 29C, because the statute does not specifically identify images taken by a cell phone camera as prohibited. Additionally, he argues that if such images do qualify, there was insufficient evidence that he possessed the images because they were not on his cell phone when seized by police.

General Laws c. 272, § 29C, inserted by St. 1997, c. 181, § 2, provides in pertinent part:

> "Whoever knowingly purchases or possesses a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction, or depiction by computer, of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such child is: . . . (vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child; with knowledge of the nature or content thereof shall be punished

---

[14]Given the result we reach, we need not address the defendant's alternative contention that the charges made against him of child enticement and of posing a child in a state of nudity (see notes 10 and 11, *supra*) were duplicative.

by imprisonment in the state prison for not more than five years or in a jail or house of correction for not more than two and one-half years or by a fine of not less than $1,000 nor more than $10,000, or by both such fine and imprisonment for the first offense . . . ."[15]

The Supreme Judicial Court's decision in *Perry* v. *Commonwealth*, 438 Mass. 282, 285 (2002), forecloses the defendant's claim that the statute does not cover a cell phone camera image. The court interpreted the phrase "visual material," as defined in c. 272, § 31, to include " '*any* . . . photograph' . . . without limitation. [Emphasis in original.] A 'photograph' is 'a picture, image, or likeness obtained by photography.' Webster's Third New Int'l Dictionary 1702 (1993). See American Heritage Dictionary 987 (1970) (photograph is '[a]n image . . . recorded by a camera and reproduced on a photosensitive surface'). In modern parlance, an image produced by a digital camera is considered 'photography,' i.e., it is 'characterized by great truth of representation or minute detail in reproduction.' Webster's Third New Int'l Dictionary, *supra.* It matters not that the scene is captured in bytes rather than on conventional film." *Ibid.*

The *Perry* court found broad legislative intent to include digital images within the definition of photographs: "The bytes of a computer image can be likened to conventional negatives. The Legislature was unconcerned with how the photographically created image is stored or communicated. So, too, it would not matter to the child whose humiliation is captured and permanently preserved on the Internet that the image is digital rather than conventional; indeed, this same permanence and the ease of transmission make the activity all the more pernicious for such a child." *Id.* at 285-286. Moreover, in *Commonwealth* v. *Hinds*, 437 Mass. 54, 63-64 (2002), cert. denied, 537 U.S. 1205 (2003), the court took a similar view of the Legislature's intent with respect to the statutory phrase "depiction by computer" in G. L. c. 272, § 29C, when, in disagreement with "the defendant's assertion that the statute refers only to physically tangible items," the court pointed out that " 'depiction by

---

[15]The defendant does not contend that the photographic images were not of the victim's genitals or buttocks.

computer' is listed as a separate and distinct category, thereby indicating that the phrase was not intended to be 'restricted to elements similar to the specific elements listed' as visual reproductions. . . . Rather, the Legislature's creation of a separate and distinct category for 'depiction by computer' manifests an intent to give special treatment to the unique issues presented by computers, including the fact that stored data, although intangible in their unprocessed form, are readily transferrable to a graphic image." (Citation omitted.) See *Perry* v. *Commonwealth*, 438 Mass. at 288 (amendment adding "depiction by computer" to G. L. c. 272, § 31, reaffirmed that "visual material" included computer images). As stated by Daniel Jensen, the witness discussed in the next section, images taken by a cell phone camera can be uploaded or transmitted via electronic mail message (e-mail).

Thus, there is little, if any, practical difference between the images produced by a dedicated digital camera and a camera that is part of a cell phone; such a camera produces a "photograph or other similar visual reproduction, or depiction by computer." G. L. c. 272, § 29C. See also *Commonwealth* v. *Hinds*, 437 Mass. at 64 (possession of child pornography that is a "depiction by computer" includes images stored in the form of data and unopened file on hard drive).

(2) *Sufficiency of the evidence.* We consider the defendant's claim of an insufficiency of evidence of his possession of child pornography under the familiar standard, viewing the evidence in a light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). As previously discussed, in order to sustain a conviction under G. L. c. 272, § 29C, the Commonwealth must present evidence that the defendant (1) knowingly possessed a photograph or other similar visual reproduction or depiction by computer; (2) depicting a child that the defendant knew or reasonably should have known was under the age of eighteen; (3) in a pose of a lewd or sexual nature as defined in the statute; and (4) with knowledge of the nature or content of the material.

There was sufficient evidence for the jury to have found that the defendant possessed the images that were sent to his cell phone. Daniel Jensen, the custodian of records for Sprint/Nextel Corporation (Sprint/Nextel), testified as to the usage period and

brought records from February 1, 2004, to July 19, 2004, for two telephone numbers. He testified about the telephone number for the cell phone associated with Mary (Mary's phone), which was opened on May 19, 2004. He also testified about the telephone number for the cell phone associated with Kenneth Hall (the defendant's phone). Both cell phones were registered to the defendant's wife. Both telephones included a "Pick Pack" feature which allowed the users to send and receive pictures, and pictures taken on the cell phones could also be uploaded and deleted to and from the user's picture mail account. Both cell phones also had "3G" Internet capability, meaning that users were able to use the telephone to access the Internet and to send e-mail, including attached pictures.

Jensen then identified twenty-eight "shared" pictures that were taken on Mary's cell phone and sent to the defendant's cell phone in a four-week time period. The photographs were stored on pictures of Mary's cell phone's picture mail account, and the pictures consisted of Mary's partially clothed body, some with accompanying text.[16]

Jensen explained that, in responding to the request for information in this case, a compact disc (CD) was produced that contained all pictures in the two mail accounts for Mary's cell phone and the defendant's cell phone. He testified that the majority of the pictures on the CD were from Mary's cell phone and that, according to the records, Mary's cell phone sent twenty-eight pictures to the defendant's cell phone. However, Sprint/Nextel did not have records of the pictures that the defendant's cell phone received because at the time the cell phone accounts were created, although the company kept records of pictures that were sent, it did not keep records of pictures that were received on cell phones (and therefore kept no record of the pictures received on the defendant's cell phone). While there

---

[16]The defendant challenged these records as not being standard business records but rather records prepared in anticipation of litigation. Concerning the creation of the telephone records, Jensen testified that after he input a certain query into the Sprint/Nextel computer, the desired records were extracted from the database and produced in the format that was then before the court. After this testimony, and after questioning by the defendant, the court allowed the admission of the Sprint/Nextel records, and the defendant objected.

was no way for Jensen to confirm whether the defendant "read" or opened messages with the pictures or only the text messages, Jensen testified that the pictures were sent directly to the defendant's cell phone and that the defendant's cell phone received them.[17,18] Furthermore, the company had a record of the pictures Mary took and sent because when a picture was sent from her cell phone it was automatically uploaded to her picture mail account.[19] Pictures would then remain on a user's Web site until either the actual picture was deleted or the picture mail account was deleted.[20]

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that the defendant possessed these images when they were transmitted to his cell phone, notwithstanding that they were not present on his cell phone at the time of his arrest and the seizure of his cell phone by police. From the evidence and the inferences that may be reasonably drawn therefrom, sufficient support may be found that he received and viewed these digital images, especially given his text message responses and continued efforts at enticing the victim to send more pictures of herself. The fact that none of the images in question remained on the defendant's cell phone does not mean that he did not possess them at one time. Possession is not

---

[17]Subscribers can delete pictures sent to their cell phone, and there is no period of time within which they can be recovered. None of the photographs entered in evidence in this case have a "time" associated with them. Jensen went on to describe the pictures associated with some of the telephone information that had already been entered in evidence. Of all the cell phone mail account pictures identified by Jensen, only three photographs were found in the defendant's picture mail account — one picture of a cell phone and two pictures of a dog.

[18]Any text message that was received only remained on the receiver's telephone for fourteen days.

[19]The user could upload the picture directly, or send it to another telephone or e-mail account.

[20]Jensen confirmed that it was possible to retrieve text messages if they were sent without photographs, and that the content of the text message itself would be available for fourteen days. This record would also identify the telephone numbers to and from which the text message was sent. However, the record would not identify whether the text message was received by the other phone, but, merely, that it had been sent to another phone. A subpoena would have been needed to preserve text messages, but none was issued in this case.

based on duration and does not require evidence of prolonged or continued control. *Commonwealth* v. *Harvard*, 356 Mass. 452, 458 (1969). In *Harvard*, a case involving an undercover purchase of narcotics, in which the defendant arranged the sale and acted as a go-between, receiving the drug from his supplier and handing it immediately to the undercover officer, the court disagreed with the defendant's contention that fleeting, momentary contact with an object could not constitute possession; the court stated that possession does not depend on the duration of time elapsing after one has an object under his control so long as, at the time of contact with the object, the person has the control and the power to do with it what he or she wills. *Id.* at 457-458. See also *Commonwealth* v. *Lacend*, 33 Mass. App. Ct. 495, 498 (1992) (momentary control enough for possession). The facts that the defendant enticed the victim to take and send him the pictures and that he received them are sufficient to show he had control and possession of those pictures. See *id.*

Viewed in a light most favorable to the Commonwealth, the evidence was sufficient for a rational jury to find that the defendant possessed child pornography.

On the indictment charging enticement of a child in violation of G. L. c. 265, § 26C, the judgment is reversed, the verdict is set aside, and judgment is to enter for the defendant. On the indictments charging enticing a child under eighteen to pose in a state of nudity, G. L. c. 272, § 29A, and possession of child pornography, G. L. c. 272, § 29C, the judgments are affirmed.

*So ordered.*