NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11717


COMMONWEALTH  vs.  ROBERT JONES.



Middlesex.     December 1, 2014. - April 9, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.



Indecent Assault and Battery.  Obscenity, Dissemination of
     matter harmful to minor.  Statute, Validity.
     Constitutional Law, Freedom of speech and press.  Practice,
     Criminal, Argument by prosecutor.




     Indictments found and returned in the Superior Court
Department on April 26, 2012.

     The cases were tried before Maureen B. Hogan, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Rebecca A. Jacobstein, Committee for Public Counsel
Services, for the defendant.
     Anne M. Paruti, Assistant District Attorney (Jessica L.
Langsam, Assistant District Attorney, with her) for the
Commonwealth.


     GANTS, C.J.  A Superior Court jury convicted the defendant

on two indictments charging indecent assault and battery on a

child under fourteen, in violation of G. L. c. 265, § 13B, and one indictment charging dissemination of matter harmful to minors, in violation of G. L. c. 272, § 28.[1]  The defendant presents two claims on appeal.  First, he contends that, during the time period alleged in the indictment, § 28 was facially overbroad because it did not explicitly require the Commonwealth to prove that the defendant knew that the person receiving the harmful matter was a minor.  Second, he argues that the prosecutor's closing argument created a substantial risk of a miscarriage of justice by suggesting that the defendant would have committed further sexual offenses against one of the child victims had the child not moved away.  We conclude that, during the relevant time period, § 28 was not unconstitutionally overbroad because we interpret the statute to have implicitly required knowledge that the recipient was a minor as an element of the crime.  We also conclude that the prosecutor's suggestion that the defendant would have committed further sexual offenses against the victim was improper but, in the context of the entire closing argument, did not create a substantial risk of a miscarriage of justice.  We therefore affirm the convictions.

Background.  The two victims were the defendant's nephews, sons of two different sisters of the defendant.  In 2006, one

---

[1] An additional charge of indecent assault and battery on a child under fourteen was nol prossed before trial.

victim, C.J., who was approximately eleven years old, moved with his mother and younger brother to Woburn, which is also where the defendant was living at C.J.'s grandmother's house. A few days during each school week, and nearly every day during the summer, C.J. went to his grandmother's house where he and the defendant spent time together playing video games, using a computer, and playing sports. Because C.J. looked up to the defendant as a father figure, he did not feel uncomfortable when the defendant began asking him about his physical development through puberty. The defendant would routinely ask C.J. about any physical changes to his body and at one point asked if he had started to "play" with his genitals.

In the summer of 2007, when C.J. was approximately twelve years old, the defendant began asking to see his genitals. With no one else in the room, the defendant and C.J. would often be sitting on the bed in the defendant's bedroom, playing video games or watching television, and the defendant would ask to see if any pubescent changes had occurred. C.J. would then stand up or kneel on the bed and pull down his pants and underwear; the defendant would look and touch with his hand the pubic region immediately above C.J.'s penis, but would not touch the penis itself. The defendant did not show his genitals to C.J. or ask C.J. to perform any sexual act with the defendant.

This pattern of asking to see C.J's genitals and touching his pubic region occurred at least twice a week, and continued for about one year before C.J. began to feel uncomfortable. C.J. first viewed these interactions as appropriate for a father figure to have with a son, but he felt more uncomfortable after he recognized that the defendant was asking to see his genitals nearly every time he visited.[2]  These interactions between the defendant and the victim stopped after C.J's family moved to Tewksbury in the summer of 2008, and shortly thereafter moved to New Hampshire.

The second victim, J.B., also lived in Woburn, with his mother, stepfather, and sister.  In 2007, J.B. was approximately nine years old and in fourth grade, and often went after school to his grandmother's house, where the defendant lived.  The defendant and J.B. had a close relationship; they played sports, attended sporting events, and went ice-skating together.  For three years, when J.B. was in the fourth, fifth, and sixth grades, the defendant went to his house to watch almost every Boston Bruins hockey game.

---

[2] The defendant also routinely kissed C.J. on the lips when they parted.  C.J. testified that kissing on the lips was a common greeting or farewell gesture in his family, but he started to feel uncomfortable when the defendant began kissing him multiple times and holding the kiss longer.

In the summer before J.B. was starting either fourth or fifth grade, the defendant asked him how puberty was going, but he did not know what puberty was. The defendant did not raise the topic again until the following winter. While the defendant and J.B. were alone watching television, the defendant asked, "How is puberty hitting you?" The defendant said, "Well, let me see then. I'll tell you how puberty is." J.B. then pulled down his pants and boxer shorts. From this point forward, about every other week, the defendant asked to see J.B.'s penis and J.B. showed him. The defendant did not touch J.B.'s penis during these interactions.

On one occasion, when J.B. was in fifth grade, sometime between 2007 and 2008, the defendant asked him to look at something on the defendant's computer. J.B. sat on the defendant's lap while the defendant opened a computer program used for downloading music and video recordings. As the defendant scrolled through a list of pornographic video recordings, J.B. saw images of nude adult men and women displaying their genitals and engaging in sexual intercourse. The defendant then played a specific video recording, which showed a group of nude women using icicles as sexual toys. The defendant asked J.B. if he had ever searched for materials similar to what was shown in the video recording, and J.B. said

"no." As they watched the video recording, the defendant unbuttoned J.B.'s pants and pulled down his pants and boxer shorts. The defendant grabbed J.B.'s penis and stroked it with two of his fingers. J.B. did not recall any other instance where the defendant touched his genitals or showed him pornography.

Discussion. 1. Dissemination of matter harmful to minors. At the time of the charged conduct, G. L. c. 272, § 28, as appearing in St. 1982, c. 603, § 2, provided, "Whoever disseminates to a minor any matter harmful to minors, as defined in [G. L. c. 272, § 31], knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to minors" shall be guilty of a crime.[3] Since then, the scope of the statute has twice been amended. In 2010, the Legislature amended § 31 to add to the definition of "matter" "any electronic communication including, but not limited to, electronic mail, instant messages, text messages, or any other communication created by means of use of the Internet

_____

[3] "Harmful to minors" is defined as "matter" that is "obscene, or if taken as a whole, . . . (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors." G. L. c. 272, § 31. "Minor" is defined as "a person under eighteen years of age." Id.

or wireless network."  St. 2010, c. 74 § 2.[4]  In 2011, the

Legislature amended § 28 explicitly to require that the

dissemination be purposeful and "to a person [the defendant]

knows or believes to be a minor."  St. 2011, c. 9, § 19.[5,6]

---

[4] This amendment was enacted after we held that the earlier definition of "matter" in § 31 did not encompass electronically transmitted texts or online conversations.  See Commonwealth v. Zubiel, 456 Mass. 27, 33 (2010).

[5] The amended G. L. c. 272, § 28, now reads, in relevant part, "Whoever purposefully disseminates to a person he knows or believes to be a minor any matter harmful to minors . . . knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to a person he knows or believes to be a minor, shall be punished . . . . A person who disseminates an electronic communication . . . shall not be found to have violated this section unless he specifically intends to direct the communication to a person he knows or believes to be a minor" (emphasis added).  St. 2011, c. 9, § 19.

[6] The 2011 amendment of § 28 followed the issuance of a preliminary injunction by a judge of the United States District Court for the District of Massachusetts, who declared that the 2010 amendments to § 31, as incorporated within § 28, violated the First Amendment to the United States Constitution.  American Booksellers Found. for Free Expression vs. Coakley, U.S. Dist Ct., No. 10-11165-RWZ, at 9 (D. Mass. Oct. 26, 2010).  The preliminary injunction arose from a civil suit filed by several individuals and organizations that used the Internet to disseminate sex-related information.  Id. at 1, 4.  The plaintiffs argued that § 28 was unconstitutionally overbroad because it did not require that a defendant know that the intended recipient of the harmful matter was a minor.  Id. at 4-5.  The plaintiffs reasoned that those who disseminate "sexually frank" information through a generally accessible Web site cannot verify the age of every individual who accesses their Web site; therefore, they cannot prevent minors from viewing information that might be harmful to them but appropriate for adults, without significantly limiting adults from accessing this information.  Id. at 4, 5 n.3.  The Commonwealth agreed

The defendant contends that until § 28 was amended to require, as an element of the offense, that the defendant disseminated the harmful matter to a person "he knows or believes to be a minor," the statute was substantially overbroad in violation of the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights. "The First Amendment doctrine of substantial overbreadth . . . is predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear of criminal sanctions" (citations omitted). Massachusetts v. Oakes, 491 U.S. 576, 581 (1989) (opinion of O'Connor, J.). Although the defendant does not contend that he did not know that the victims were minors, he need not do so in order to challenge the constitutionality of the statute, because the overbreadth doctrine "is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others."

---

that, if § 28 did not require that the sender know that the recipient was a minor, the statute would be unconstitutionally overbroad. Id. at 5. The judge noted that she could not construe the statute to require such knowledge as an element of the offense because "in the absence of an explicit state court adjudication . . . revision of a state statute by a federal court would be inappropriate." Id. at 7.

Id.  See <u>Bulldog Investors Gen. Partnership</u> v. <u>Secretary of the Commonwealth</u>, 460 Mass. 647, 676 (2011), cert. denied, 132 S. Ct. 2377 (2012) ("The overbreadth doctrine allows an individual whose speech may be constitutionally regulated to argue that a law is unconstitutional because it infringes on the speech of others").

The premise underlying the defendant's overbreadth claim is that § 28 prior to amendment did not require as an element of the offense that the defendant knew that the recipient of the harmful matter was a minor.  If that premise is correct, the statute would be constitutionally suspect because it would chill the non-obscene, sex-related speech of those who cannot reasonably ensure that the matter they disseminate will be seen only by adults.  See <u>Reno</u> v. <u>American Civil Liberties Union</u>, 521 U.S. 844, 875 (1997) (governmental interest "in protecting children from harmful materials . . . does not justify an unnecessarily broad suppression of speech addressed to adults" [citations omitted]).  See also <u>Smith</u> v. <u>California</u>, 361 U.S. 147, 153-154 (1959) (punishing bookseller for possession of obscene books without knowledge of obscene content would cause self-censorship and severely limit public access to constitutionally protected matter, because booksellers are limited in amount of reading material with which they can

familiarize themselves and they would grow timid in face of "absolute criminal liability").

In determining whether to construe the statute prior to amendment to require such knowledge, we apply two principles of statutory construction.  First, "a statute is to be construed where fairly possible so as to avoid constitutional questions." United States v. X-Citement Video, Inc., 513 U.S. 64, 69 (1994). See Commonwealth v. Disler, 451 Mass. 216, 228 (2008) (it is our duty to interpret statutes in manner that avoids constitutional difficulties "if reasonable principles of interpretation permit it" [citation omitted]).  See also O'Brien v. Borowski, 461 Mass. 415, 422 (2012) ("we have not hesitated to construe statutory language narrowly to avoid constitutional overbreadth"); Demetropolos v. Commonwealth, 342 Mass. 658, 660 (1961) ("where a statute may be construed as either constitutional or unconstitutional, a construction will be adopted which avoids an unconstitutional interpretation").

Second, where First Amendment rights are at issue, we presume "that some form of scienter is to be implied in a criminal statute even if not expressed."  X-Citement Video, Inc., 513 U.S. at 69 (construing statute to require knowledge that performer in visual depiction of sexually explicit conduct was minor).  See Commonwealth v. Buckley, 354 Mass. 508, 510

(1968) ("Statutes, purporting to create criminal offences which may impinge upon the public's access to constitutionally protected matter . . . , have been construed to require knowledge by the accused of the facts giving rise to criminality" [quotation and citation omitted]); Commonwealth v. Corey, 351 Mass. 331, 332-333 (1966).

In Corey, 351 Mass. at 334, we applied both of these principles when interpreting an earlier version of § 28 to require scienter.[7]  The defendant was an employee in a Boston book store who sold a book entitled "Candy" to a seventeen year old girl who asked for the book by name.  Id. at 332.  The defendant argued that he could not be convicted under § 28 without evidence that he knew of the allegedly obscene content of the book; the Commonwealth conceded that it had offered no such evidence.  Id.  According to the Commonwealth, the absence of any language in the statute requiring scienter suggested that the Legislature intended to enact a strict liability criminal statute, much like it did when it enacted a strict liability

---

[7] The relevant portions of the earlier version of § 28 read, "Whoever sells . . . to a person under the age of eighteen years a book . . . which is obscene, indecent or impure, or manifestly tends to corrupt the morals of youth . . . shall be punished . . . ."  Commonwealth v. Corey, 351 Mass. 331, 331 (1966), quoting G. L. c. 272, § 28, as amended through St. 1959, c. 492, § 1.

criminal statute prohibiting the sale of liquor to minors.  Id.
at 333.

We acknowledged that the Legislature had the authority in
enacting criminal statutes to define criminal offenses that had
no element of scienter, but also recognized that "a different
situation is presented when the legislation is in an area where
First Amendment rights are involved."  Id.  Where First
Amendment rights are involved, "[t]he [United States]
Constitution requires proof of scienter to avoid the hazard of
self-censorship of constitutionally protected material."  Id. at
332-333, quoting Mishkin v. New York, 383 U.S. 502, 511 (1966).
Thus, if § 28 had no scienter requirement, "booksellers, unable
to familiarize themselves with all the material on their
shelves, would tend to restrict sales to minors to the
relatively few books of which they had some knowledge of the
contents or character.  The result would be an impediment to the
sale to minors not only of unprotected matter but also of that
which is constitutionally protected."  Corey, supra at 334.  We
held that § 28 "must be read as requiring scienter."  Id.

For similar reasons, we now construe § 28 prior to
amendment to require scienter that the recipient was a minor.
If scienter as to the recipient's age were not required, online
booksellers and other Web site administrators who could not

reasonably identify the age of every person who visits their Web sites would be discouraged from disseminating material that is appropriate for adults but harmful to minors. See State v. Weidner, 235 Wis. 2d 306, 322 (Wis. 2000) ("By requiring an [I]nternet user . . . to prove lack of knowledge regarding the age of the person exposed to material deemed harmful to a child, the [Wisconsin statute on dissemination of matter harmful to minors] effectively chills protected [I]nternet communication to adults"). Thus, interpreting the statute to require knowledge that the recipient is a minor is necessary to avoid impinging on public access to constitutionally protected matter. See Corey, 351 Mass. at 334.

We interpret § 28 to include an implied element of scienter, not only to preserve the constitutionality of the statute, but also to reflect what we understand to be the legislative intent. First, we note that the statute explicitly requires that the defendant have knowledge that the matter disseminated is harmful to minors. See G. L. c. 272, § 28, as appearing in St. 1982, c. 603, § 2 ("Whoever disseminates to a minor any matter harmful to minors . . . knowing it to be harmful to minors"). Second, we previously construed § 28 to require that the act of dissemination be "purposeful or intentional" rather than inadvertent, even though the statute

itself did not explicitly state the level of intent necessary to prove dissemination. Commonwealth v. Belcher, 446 Mass. 693, 696-697 (2006). Finally, because § 28 also made it a crime to possess any matter harmful to minors "with the intent to disseminate the same to minors," the Legislature likely intended that same intent be required to criminalize the dissemination of the same matter. See X-Citement Video, Inc., 513 U.S. at 72 ("the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct").

Where we adopt a limiting construction of a statute to avoid substantial overbreadth, as we have done here by requiring scienter that the recipient is a minor, "the statute, as construed, 'may be applied to conduct occurring prior to the construction, provided such application affords fair warning to the defendants.'" Oakes, 491 U.S. at 584 (opinion of O'Connor, J.), quoting Dombrowski v. Pfister, 380 U.S. 479, 491 n.7 (1965). See Osborne v. Ohio, 495 U.S. 103, 119 (1990) ("Courts routinely construe statutes so as to avoid the statutes' potentially overbroad reach, apply the statute in that case, and leave the statute in place"). Here, where there can be no issue of fair warning, we conclude that § 28 included an implied scienter requirement before the 2011 amendment made that

requirement explicit and was therefore not unconstitutionally
overbroad.[8]

---

[8] On appeal, the Commonwealth also argues that the
defendant's overbreadth challenge was rendered moot by the 2011
amendment, even though the amendment was not effective during
the time period covered by the indictment.  The Commonwealth's
argument rests on the plurality opinion of Justice O'Connor in
Massachusetts v. Oakes, 491 U.S. 576, 582 (1989), joined by
three other Justices, which concluded that "overbreadth analysis
is inappropriate if the statute being challenged has been
amended or repealed."  Justice O'Connor reasoned:

> "Overbreadth is a judicially created doctrine designed to
> prevent the chilling of protected expression.  An overbroad
> statute is not void ab initio, but rather voidable, subject
> to invalidation notwithstanding the defendant's unprotected
> conduct out of solicitude to the First Amendment rights of
> parties not before the court.  Because the special concern
> that animates the overbreadth doctrine is no longer present
> after the amendment or repeal of the challenged statute, we
> need not extend the benefits of the doctrine to a defendant
> whose conduct is not protected."

Id. at 584.  Justice Scalia wrote a separate opinion, Part I of
which was joined by four other Justices, which stated that a
subsequent legislative amendment of a statute does not
"eliminate the basis for the overbreadth challenge."  Id. at
585-586.  Justice Scalia reasoned:

> "The overbreadth doctrine serves to protect
> constitutionally legitimate speech not merely ex post, that
> is, after the offending statute is enacted, but also ex
> ante, that is, when the legislature is contemplating what
> sort of statute to enact.  If the promulgation of overbroad
> laws affecting speech was cost free, as Justice O'Connor's
> new doctrine would make it -- that is, if no conviction of
> constitutionally proscribable conduct would be lost, so
> long as the offending statute was narrowed before the final
> appeal -- then legislatures would have significantly
> reduced incentive to stay within constitutional bounds in
> the first place" (emphasis in original).

Having construed § 28 prior to amendment to require

knowledge that the recipient of the harmful matter was a minor,

Id. at 586. It was only because Justice Scalia concluded that the statute prior to amendment was not impermissibly overbroad that Justice O'Connor's opinion had the five votes necessary to announce the judgment of the court to vacate the judgment below and remand for further proceedings. Id. at 585, 588, 590.

Several circuit courts of the United States Court of Appeals have agreed that a subsequent amendment of a statute renders moot an overbreadth defense. See, e.g., National Advertising Co. v. Miami, 402 F.3d 1329, 1332 (11th Cir. 2005), cert. denied, 546 U.S. 1170 (2006); Stephenson v. Davenport Community Sch. Dist., 110 F.3d 1303, 1311-1312 (8th Cir. 1997); Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637, 644 (6th Cir.), cert. denied, 522 U.S. 860 (1997). Yet, as the defendant notes, part I of Justice Scalia's opinion was the "only proposition to which five Members of the Court [had] subscribed." Oakes, supra at 591 n.1 (Brennan, J., dissenting). The Supreme Court has explained that where "no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" Marks v. United States, 430 U.S. 188, 193 (1977), quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976). However, the Court has also acknowledged that this test "is more easily stated than applied." Nichols v. United States, 511 U.S. 738, 745 (1994). See United States v. Robison, 521 F.3d 1319, 1323-1324 (11th Cir. 2008) ("narrowest grounds" approach does not make sense where two opinions "simply set forth different criteria" and one opinion does not constitute subset of broader opinion). "Since Marks, several members of the Court have indicated that whenever a decision is fragmented such that no single opinion has the support of five Justices, lower courts should examine the plurality, concurring and dissenting opinions to extract the principles that a majority has embraced" (emphasis added). United States v. Johnson, 467 F.3d 56, 65 (1st Cir. 2006), cert. denied, 552 U.S. 948 (2007). Because we construe the statute prior to amendment to be constitutional, we need not determine the appropriate method of interpreting fragmented Supreme Court decisions in order to decide whether, under Oakes, the 2011 amendment of § 28 rendered the defendant's overbreadth challenge moot.

we must address whether the defendant's conviction under § 28 can stand where the judge's final instructions to the jury did not inform them of this element.  See Osborne, 495 U.S. at 118, citing Shuttlesworth v. Birmingham, 382 U.S. 87, 91-92 (1965) ("where a State Supreme Court narrows an unconstitutionally overbroad statute, the State must ensure that defendants are convicted under the statute as it is subsequently construed and not as it was originally written").  Where, as here, the defendant did not object to the judge's jury instructions, we determine whether the absence of such an instruction created a substantial risk of a miscarriage of justice.  See Belcher, 446 Mass. at 696.  We conclude that there was no such risk in this case, where the defendant was the uncle of the victim, J.B., and knew him very well, and where J.B. was well below eighteen years of age when the defendant showed him the pornographic material.

2.  Closing argument.  The defendant also contends that the prosecutor's closing argument improperly suggested that the defendant would have touched C.J. in the same manner that he touched J.B. if C.J. had not moved away.  The prosecutor stated:

>   "Was [the defendant] able to progress any further than touching [C.J.]'s pubic area?  No.  Why not?  Because [C.J.] left, that's why.  Not because he was done learning about sex from his uncle, because he physically moved to another state.  You heard eighth grade he left.  He was in Tewksbury for a short amount of time and then New Hampshire.  At that point they saw each other infrequently,

not every day.  The access collapsed and his opportunity at that point to take it further vanished."

The prosecutor later reemphasized this theory, stating, "Now the point that [the defendant] got to with [J.B.] shows you exactly what his intent was when he started with [C.J.].  Due to circumstances beyond his control, that is a couple of hundred miles maybe or a state border, he was unable to reach that point with [C.J.]."

The defendant contends that the prosecutor's argument regarding the sexual crimes that the defendant would have inflicted on C.J. had C.J. not moved was improper because it was speculative and played on the jury's fear that, if they found the defendant not guilty, he would "take it further" and commit more sexual crimes.  See Commonwealth v. Ayoub, 77 Mass. App. Ct. 563, 569 (2010) (statements that "invited speculation about offenses uncommitted and . . . uncharged" are imprudent).  Because the defendant failed to object to the closing argument, we review whether the prosecutor's argument created a substantial risk of a miscarriage of justice.  See Commonwealth v. Renderos, 440 Mass. 422, 425 (2003).

The prosecutor's remarks were improper in that they suggested that had C.J. not moved away, the defendant might have committed additional sexual offenses against him, which invited the risk that the jury would divert their focus from the

evaluation of the evidence regarding the defendant's alleged crimes, and consider instead what the defendant might have done under different circumstances. A prosecutor may make reasonable inferences as to what might have actually happened during the commission of the alleged crimes, but may not argue what might have happened had the victim not moved away.

The challenged remarks, however, followed the defendant's closing argument, and must be evaluated in that context. See Renderos, 440 Mass. at 425 (prosecutor's remarks evaluated in context of entire closing argument, judge's instructions of law, and evidence at trial); Commonwealth v. Grandison, 433 Mass. 135, 143 (2001) (prosecutor may fairly respond to defendant's closing argument). In his closing argument, the defendant's trial counsel contended that the defendant was "trying to introduce these young men to this whole idea of sexual development, maturity, puberty and everything that goes along with sex education," albeit in a clumsy manner, and therefore "[n]one of these events were [sic] indecent." The prosecutor countered that the defendant's touching of the victims was not for the purpose of their sex education, but for his own sexual gratification and that the defendant took advantage of the trust he had built with the victims. In this context, a reasonable jury were more likely to have understood the prosecutor's

statements that suggested what the defendant might have done, had C.J. not moved away, as commentary on the intent of the defendant's earlier touching of C.J., rather than on the defendant's future sexual dangerousness.  The prosecutor's statement, "[T]he point that [the defendant] got to with [J.B.] shows you exactly what his intent was when he started with [C.J.]," directed the jury to consider the defendant's conduct with J.B. in evaluating the defendant's intent in touching C.J. Having considered the prosecutor's improper statements in the context of the closing arguments and recognizing the strength of the evidence against the defendant, we conclude that there was no substantial risk of a miscarriage of justice.

Conclusion.  Because G. L. c. 272, § 28, was constitutional at the time of the defendant's charged conduct, and the prosecutor's closing argument did not create a substantial risk of a miscarriage of justice, we affirm the defendant's convictions.

So ordered.