NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-446                                        Appeals Court

COMMONWEALTH vs. MICHAEL MIENKOWSKI.

No. 16-P-446.

Middlesex.     April 5, 2017. - June 8, 2017.

Present: Milkey, Massing, & Desmond, JJ.


Rape. Obscenity, Child pornography, Dissemination of matter
    harmful to minor. Constitutional Law, Freedom of
    association, Freedom of speech and press. Evidence,
    Photograph, Videotape. Cellular Telephone. Practice,
    Criminal, Instructions to jury, Jury and jurors. Jury and
    Jurors.


Indictments found and returned in the Superior Court
Department on June 13, 2012.

The cases were tried before Edward P. Liebensperger, J.


Rebecca A. Jacobstein, Committee for Public Counsel
Services, for the defendant.
Gabriel Pell, Assistant District Attorney, for the
Commonwealth.


MILKEY, J. A Superior Court jury convicted the defendant

of two counts of aggravated rape of a child, G. L. c. 265,

c. § 23A, and one count each of posing a child in a state of

nudity, G. L. c. 272, § 29A(a), and of dissemination of matter harmful to minors, G. L. c. 272, § 28. The victim, to whom we shall refer using the pseudonym Beth, was thirteen years old when the rapes occurred and fourteen years old at the time of the incidents underlying the posing and dissemination charges. On appeal, the defendant principally targets the dissemination conviction, which was based on the defendant's sending Beth a video recording (video) of himself masturbating. He raises a wide variety of arguments regarding that conviction, including that, as a matter of law, someone cannot be convicted of disseminating "a video of something that the [L]egislature has determined a minor is permitted to see and do in person." He also claims error regarding the extent to which the jury were allowed to examine a cellular telephone (cell phone) that was admitted in evidence (an argument that relates to all four convictions). We affirm.

Background. We summarize the facts the jury could have found as follows, reserving some facts for later discussion. During her fifth and sixth grade years, Beth lived with her aunt and uncle in New Hampshire. This was because Beth's mother was an alcoholic and drug abuser. By the fall of 2010, the mother had temporarily achieved sobriety, and Beth returned to live with her in an apartment in Lowell. At this time, Beth had just turned thirteen and was beginning seventh grade.

The defendant, then twenty-three and unemployed, lived in a neighboring apartment with his own mother.  He and Beth began "hanging out" when she was not in school, playing video games and the like.  The defendant protected Beth from being beaten up by others, and she began spending all of her free time with him.  In fact, she came to believe she was in love with him.  Approximately six months after they met, the defendant regularly began inserting his finger and tongue into Beth's vagina.  This was the basis of his two aggravated rape convictions (with the age difference between them being the aggravating factor).  Beth also testified that the defendant regularly inserted his penis into her vagina and mouth, but the jury acquitted him of two separate counts of aggravated rape based on such conduct.[1]

By the end of Beth's seventh-grade year, her mother had relapsed, and Beth was sent back to live with her aunt and uncle in New Hampshire.[2]  Over the course of the summer, she turned fourteen, and she began eighth grade in the fall.  At this point, Beth and the defendant lived in different States, but they continued to communicate by cell phone, including through text messages.  Because the aunt was suspicious of Beth's

---

[1] As the defendant points out, the jury appear to have convicted the defendant of those rape charges for which the defendant's own statements (made in text messages he sent to Beth) corroborated Beth's allegations.

[2] Beth's mother died a few months later.

relationship with the defendant,[3] she periodically looked through Beth's cell phone for text messages between them.  The aunt's efforts at surveillance were thwarted by Beth's daily practice of deleting all such text messages.

However, the aunt finally was able to view a lengthy exchange of text messages that took place between Beth and the defendant over three days in December, 2011.[4]  She turned over the cell phone to the Lowell police, and the text messages memorialized there became key evidence at trial.  These messages, which were sexually explicit, provided direct corroboration of the digital and oral rapes of which the defendant was convicted.  Two of the messages also were the basis of the other charges that resulted in convictions.  The dissemination charge was based on the defendant's attaching to one of his text messages a video -- shot at very close range -- of him masturbating.[5]  The charge for posing a child nude was based on the defendant's inducing Beth to send him back a

---

[3] Her suspicions were based on what she observed on Beth's page on the social media Web site Facebook and on once having observed the defendant hand Beth a razor while Beth was living in Lowell.

[4] There was evidence that the aunt gained access to the cell phone when Beth was hospitalized after a suicide attempt.

[5] As depicted in still photographs taken from the video, only a hand and penis are visible.  Beth identified the penis as the defendant's, and this was corroborated by the defendant's text messages.

photograph of her vagina.  The defendant's efforts at such inducement took many forms, including flattery, statements that Beth owed him the photograph because he had sent her the masturbation video, and jealousy-fueled badgering that Beth's refusal to send him the requested photograph was proof that she was having sex with others.[6]

When questioned by police about his relationship with Beth, the defendant declaimed that she was a "slut" and a "whore" who was making false allegations against him.  He denied that he had raped Beth, sent her the masturbation video, or induced her to send him the photograph in return.  He admitted to having sent some of the text messages in the December, 2011, exchange,[7] while suggesting that the ones that were directly incriminating must have been sent by someone borrowing his cell phone or fabricated by Beth, the aunt, or the police.  He did not testify at trial but, through counsel, he continued to press a fabrication defense.

---

[6] One example will suffice to illustrate the tone and substance of the defendant's text messages.  Expressing frustration that Beth would not send him a better photograph of her vagina, the defendant texted her:  "Yea your afraid to send a pic cause your afraid your gunna be looser than that pic I showed you cause you are haveing sex you never hide your pussy" (misspelling and lack of punctuation in the original).

[7] In fact, without reference to any specific text messages, the defendant admitted to having sexually explicit exchanges with Beth, e.g., about whether she remained a virgin.

Discussion. 1. Sufficiency. The defendant argues, inter alia, that the evidence was insufficient to support the dissemination conviction. We review the denial of a motion for a required finding of not guilty to determine whether, in "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) (quotation omitted).

The defendant concedes that there was sufficient evidence that he sent the video to Beth, but asserts that there was insufficient evidence that it qualified as "matter harmful to minors," or that he had specific knowledge of this. We address these issues in turn.

The Legislature has defined "harmful to minors" as follows:

"matter is harmful to minors if it is obscene or, if taken as a whole, it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors."

G. L. c. 272, § 31, as amended through St. 1982, c. 603, § 6.[8] The masturbation video unmistakably depicts both "nudity" and

---

[8] We focus our analysis on the three-part test just quoted. As the full quote reveals, material is also defined to be "harmful to minors" if it is "obscene." In turn, the term

"sexual conduct."  It also makes no pretensions to "serious literary, artistic, political or scientific value."  The video thus meets the just-stated statutory test if it "appeal[s] predominantly to the prurient interest of minors" and "is patently contrary to prevailing standards."

The defendant argues that the video cannot meet those standards because the Legislature has recognized that a child of fourteen is old enough to partake in consensual sexual activity that does not involve penetration.  In support of that argument, the defendant highlights that the Commonwealth cannot prosecute someone for an indecent assault and battery of a child pursuant to G. L. c. 265, § 13B (which does not require proof of lack of consent), unless the child is under the age of fourteen.[9]  If Beth could have consented to the defendant's actions in person, the defendant asks, how could the Legislature have intended to criminalize his sending her a video of such conduct?

We are not persuaded, and we have little trouble in concluding that rational jurors could find that the video "appeal[s] predominantly to the prurient interest of minors" and

"obscene" is separately defined by a similar three-part test, albeit one that is not limited to the effect of the material on minors.  See G. L. c. 272, § 31.

[9] Because the video did not depict any touching between the defendant and Beth, a closer example might be whether a child of fourteen could consent to someone's indecently exposing himself. We express no view on this issue.

"is patently contrary to prevailing standards."[10]  This is especially true when we consider the video in context, as the defendant vigorously has urged us to do.  See Commonwealth v. Plank, 378 Mass. 465, 469 (1979) ("[T]he issue of patent offensiveness is to be decided in context").  The defendant seeks to portray his sexual relationship with Beth as a consensual one between a young adult and a mature adolescent.  Our view accords with that of the Commonwealth, which succinctly stated in its brief:  "The defendant's 'relationship' with the victim was that of a rapist and his [child] victim."  Moreover, text messages between the defendant and Beth, which were admitted as exhibits at trial, demonstrate that the defendant used the video as part of the currency of his sexual and emotional abuse of Beth (for example, he presented it as one of the reasons that the victim had to send him a photograph of her own genitalia).  The direct evidence that the defendant used the video in an effort to manipulate and degrade Beth from afar supplied ample basis for rational jurors to find that the video

---

[10] In assessing this, we have assumed arguendo that the defendant is correct that the word "prurient" must be interpreted narrowly to mean "'a shameful or morbid interest in nudity, sex, or excretion,' an unhealthy interest about sexual matters which is repugnant to prevailing moral standards." Instruction 7.180 of the Criminal Model Jury Instructions for Use in the District Court (2009), quoting from Roth v. United States, 354 U.S. 476, 487 n.20 (1957).  See Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 504 (1985).

satisfied the statutory test.  In sum, the record well illustrates how such material can be harmful to minors.

The defendant's related argument that there was insufficient evidence of his knowledge that the material was harmful to minors fares no better.  What we said about similar material one-quarter of a century ago remains true today:  it is "impossible to believe that any competent adult would be surprised that this conduct would be proscribed."  Commonwealth v. Nuby, 32 Mass. App. Ct. 360, 363 (1992).[11]  In addition, the defendant's own statements denying that he had sent Beth texts that included sexually explicit content provide direct evidence that he knew such conduct was wrong.  For example, as documented in his taped interview with the police, in response to the police alleging that he had sent the video to Beth, the defendant emphatically stated that he "wouldn't send anything piggish like that."

2.  Overbreadth and protected speech.  The defendant maintains that his relationship with Beth fell within the scope of his right to free association and that his sending the video to Beth constituted speech protected by the First Amendment to

---

[11] For the same reason, we discern no merit in the defendant's argument that the statute is impermissibly vague. See Commonwealth v. Bohmer, 374 Mass. 368, 371 n.6 (1978) ("hard-core violator" whose conduct is clearly proscribed by statute that might be vague as to its reach over other acts is not entitled to raise vagueness challenge).

the United States Constitution in the context of that relationship.  Both arguments are easily refuted.  See Commonwealth v. Bean, 435 Mass. 708, 711-712 (2002) ("[C]onduct is appropriately prohibited in light of the compelling State interest in protecting children from exploitation, even though the prohibition incidentally impinges on First Amendment freedoms").  See also Commonwealth v. Disler, 451 Mass. 216, 230 (2008) ("There is no right to free speech or free association implicated when someone entices another with the intent to commit a criminal act on [her]").

The defendant also seeks to press a facial overbreadth argument, asserting that even if his particular actions do not constitute protected speech, the statute cannot be enforced because doing so has the effect of unduly chilling speech that is protected.  That argument was not raised below in a pretrial motion to dismiss (or otherwise).  See Commonwealth v. Chou, 433 Mass. 229, 238 (2001) (facial challenge to validity of statute must be raised in pretrial motion to dismiss).  The issue therefore has been waived.  Nevertheless, both sides take the position that such a claim still would be subject to review for a substantial risk of a miscarriage of justice, and there is case law to support that contention.  See ibid.; Commonwealth v.

St. Louis, 473 Mass. 350, 355 (2015).[12]  In any event, we are unpersuaded by the defendant's argument that the statute suffers from facial overbreadth.

As the Commonwealth highlights, the amended version of G. L. c. 272, § 28, see St. 2011, c. 9, § 19, explicitly requires the Commonwealth to prove that the defendant knew both that the recipient was a minor and that the material transmitted was harmful.[13]  The statutory definition of "harmful to minors" further limits the reach of the statute to material outside the First Amendment's protection with respect to minors.  G. L. c. 272, § 31.  Given these constraints, we discern little danger that the statute will "cause persons whose expression is constitutionally protected to refrain from exercising their rights."  Commonwealth v. Jones, 471 Mass. 138, 142 (2015) (quotation omitted).  See id. at 144-146 (upholding § 28 as in effect prior to 2011 amendment as not overly broad on basis of implied requirement of knowledge that victim was minor).  See

---

[12] Because a facial challenge either involves abstract arguments or is based on invoking the rights of others, it is not clear how an unpreserved facial challenge ever could cause a substantial risk of a miscarriage of justice.  See Commonwealth v. Russell, 439 Mass. 340, 351 (2003) (substantial risk standard "does not encompass an abstract, theoretical possibility of a miscarriage of justice, utterly divorced from the case as it was tried").

[13] The judge's charge to the jury reflected the 2011 amendment to G. L. c. 272, § 28, which took effect on April 11, 2011.  The dissemination charge covered the period from August 20, 2010, to December 17, 2011.

also Commonwealth v. Corey, 351 Mass. 331, 334 (1966) (statute as in effect in 1959 not facially overbroad where court implied scienter requirement as to harmful nature of content).

3. Jury instructions. The defendant argues that the judge's instructions to the jury on what it means for material to be "harmful to minors" were erroneous. He asserts that the term "prurient" was given too broad a definition. He also argues that the judge's use of the word "or" rather than "and" between the elements of the three-part test for what makes material "obscene" effectively removed a component of that test from the jury's consideration. Because no objection to these instructions was lodged at trial, our review is limited to whether the errors created a substantial risk of a miscarriage of justice. Commonwealth v. Perl, 50 Mass. App. Ct. 445, 452 (2000).

As the Commonwealth points out, where a trial judge misstates or even omits an element of an offense, there is no substantial risk of a miscarriage of justice if the element at issue was not "actively contested at trial." Commonwealth v. Spearin, 446 Mass. 599, 609 (2006) (quotation omitted). Such is the case here. At no point before or during trial did the defendant or his attorney contest the claim that the masturbation video constituted "matter harmful to minors." Therefore, any error in the jury instructions on this

issue did not cause a substantial risk of a miscarriage of justice.

4. Jury use of the cell phone. As noted, the text messages on Beth's cell phone provided key evidence against the defendant. These were introduced through individual photographs taken of each relevant message displayed on the cell phone. A Commonwealth expert took these photographs of the cell phone's screen after manually accessing the text messages.[14] Through cross-examination and argument, the defendant sought to sow doubt about whether he had sent the messages to Beth, or whether they instead had been fabricated by her, the aunt, or someone else. The cell phone itself was introduced in evidence, although there was some initial ambiguity about what use the jury would be able to make of it once deliberations began. We proceed to review in some detail how that issue played out.

At the point the judge allowed the defendant's request to have the cell phone admitted, the prosecutor did not object, but inquired, "Can we talk about instructions later?" The judge responded, "I will of course instruct them."

---

[14] Initially, the expert had tried to extract the text messages electronically using a program and associated hardware known as Cellebrite. However, Cellebrite was incompatible with this model of cell phone, and it therefore generated a report that the expert concluded was unreliable. Although the defendant never established the reliability of the Cellebrite report, the judge allowed him substantial leeway in seeking to use it to impeach the Commonwealth's expert's conclusions about the contents of the cell phone.

The cell phone's having been admitted in evidence came up next during the charge conference.  The prosecutor stated her position that the jury should be allowed to make only a limited examination of the cell phone:

> "I'd ask that the Court, when it instructs the jury about examination of the telephone, Exhibit 81, that it also instruct that they are to limit their consideration to the facts that are actually in evidence and that any other conversations between the alleged victim in this case and any other person is irrelevant and is not to be considered by them in their determination of the defendant's guilt or innocence."

Defense counsel then stated her client's position in the following terms:

> "I think Your Honor has gotten that part of my argument is that it's not reliable that it's been tampered with, that it has been manipulated, the phone.  And so I certainly don't want them to not look at other things but I agree that they can't consider it in terms of the defendant's guilt or innocence.  But I don't want them to go out there with the impression that they are only restricted to what's on those screen shots because that's the whole point of admitting the phone."

The judge responded by stating:  "I think that will be clear from my instruction."

During her closing argument, defense counsel several times urged the jury to look through the cell phone.  In instructing the jury about their handling of it, the judge stated as follows:  "You should limit your consideration to what is in evidence.  I have ruled to the extent the phone might contain texts from other people no relevant texts have been offered in

evidence by either side."  The defendant raised a limited objection to this instruction, arguing:  "I did move to admit the phone and I don't want -- I'm not moving for them to look at the content of the texts but the date, the time, whatever else is on the phone I think is important for them to determine the reliability of the phone."  The judge declined to give additional instruction, and the defendant's objection was noted.

After the case went to the jury, they posed the following question to the judge:

> "Your Honor:  Are we limited only to screen shots numbered as evidence in the case, within the phone?  Or do we have free rein to explore other content on the phone?"

The Commonwealth reiterated its consistent position that in examining the cell phone, the jury should be limited to viewing the text messages between the defendant and Beth that separately had been introduced as screen shots, e.g., to assess the accuracy of those screen shots.  The defendant's position is more difficult to describe, because counsel both argued for giving the jury "free range to explore the phone," while also conceding that the jury should not be "considering as evidence the content of the texts" between Beth and others.  The judge essentially adopted the Commonwealth's position, responding to the jury's question as follows:

> "You are limited to the evidence admitted in this case.
> That evidence includes the screen shots numbered in
> evidence.  Other information on the phone, if any, is not

evidence.  You may explore the phone to compare the
contents to the screen shots."

Although the defendant objected to this, there was never any
offer of proof made as to what the jury would have found had
they been allowed freer rein.

On appeal, the defendant argues that the judge's placement
of limits on the jury's examination of the data contained in the
cell phone somehow severely constrained his defense of
fabrication.  Even today, the defendant is unable to articulate
what data was excluded from the jury's eyes, how the judge erred
in effectively excluding such data, and how the defendant was
prejudiced thereby.  Indeed, the defendant has not even
demonstrated that any of the unidentified material that he
wanted the jury to be able to see had any probative value
whatsoever (to say nothing of countervailing prejudice to the
Commonwealth, privacy concerns, and the like).  See Commonwealth
v. Gray, 463 Mass. 731, 751 (2012).  We have little difficulty
in concluding that the judge did not abuse his discretion in
limiting the jury's exploration of Beth's cell phone.  See id.
at 751-752 (determinations of relevance and probative value are
"committed to the sound discretion of the trial judge and will
not be disturbed by a reviewing court absent palpable error"
[quotation omitted]).

The defendant makes a second argument related to the cell phone issue that stands on somewhat firmer ground.  He suggests that by the judge's initial admission of the cell phone in evidence without limitation, and then by his statements at the charge conference as to what his instructions would make clear, the judge led defense counsel to invite the jury to roam through the cell phone in her closing argument.  Then -- according to the defendant -- the judge cut the legs out from under such an argument through his instructions and his answer to the jury's question.  See Commonwealth v. Smith, 49 Mass. App. Ct. 827, 832 (2000).

To the extent that the defendant suggests that the judge changed his mind with respect to how much leeway the jury would have to explore the cell phone, we disagree.  At the same time, as the detailed recitation of the handling of the cell phone issue set forth above reveals, until the judge issued his instructions, there was some ambiguity regarding how he intended to handle the issue.  It may also be that neither the litigants nor the judge fully had considered the plethora of difficult issues that may be raised when a cell phone containing troves of unidentified electronic data is delivered into a jury's hands.

With the luxury of twenty-twenty hindsight available to appellate judges, we can say that it would have been preferable to resolve how much leeway the jury would be given with the cell

phone at an earlier point in the proceedings.[15]  However, "[a] defendant is entitled to a fair trial but not a perfect one." Commonwealth v. Graves, 363 Mass. 863, 872 (1973) (quotation omitted).  We are confident that the defendant received a fair trial here for several reasons.  Especially given that the prosecutor flagged the need for jury instructions regarding the cell phone when it was introduced in evidence, we do not view the judge's admission of the cell phone without express limitations on its use as resolving what the jury could do with it.  Moreover, any confusion coming out of the charge conference appears to have been due, at least in significant part, to the lack of clarity in the statement of the defendant's position on the issue (to which the judge was responding).  In addition, although defense counsel's closing argument suggested that the jury would be able to explore the cell phone more freely than they were allowed to, the defendant has never argued that the jury should have been given the free rein they inquired about. Thus, this is not a case where the judge's instructions contradicted the defendant's closing argument.  Contrast Commonwealth v. Smith, 49 Mass. App. Ct. at 832.  Finally, prior to trial, the court provided the defendant with funds to pay for an expert to explore whether the text messages between Beth and

---

[15] In fact, such issues -- and the propriety of a cell phone's going to the jury at all -- would best be addressed in a pretrial motion in limine.

the defendant had been fabricated, and during the trial, the judge allowed defense counsel significant leeway in seeking to raise questions about the authenticity of these messages.  In sum, the defendant had a fair opportunity to advance his claim that the messages were fabricated.  We discern no reversible error in the judge's handling of the cell phone issue.

Judgments affirmed.