After a jury-waived trial, the defendant was convicted of enticing a minor under the age of sixteen, and dissemination of matter harmful to a minor.[2] He appeals only the dissemination to a minor conviction, arguing that the harmful matter was disseminated to an adult police officer, not a minor, as required by the statute in effect at the time of the charged offense. We affirm.
On November 20, 2009, when the defendant was charged with disseminating harmful matter to a minor, the statute in effect, G. L. c. 272, § 28, read, "Whoever disseminates to a minor any matter harmful to minors,[3] as defined in section thirty-one, knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to minors, shall be punished ..." (emphasis supplied).[4] ,[5] G. L. c. 272, § 28, as appearing in St. 1982, c. 603, § 2 (1982). See Commonwealth v. Jones, 471 Mass. 138, 141 (2015).
The minor victim testified at trial that on April 10, 2009, when he was thirteen years old, he was playing golf with three of his friends at a nine-hole golf course. When his group was on the fifth hole, the victim noticed that the defendant was golfing on the seventh hole with an elderly gentleman and a younger man; the victim noticed that the two other men left at the seventh hole but the defendant remained and continued golfing to the ninth hole. When the victim and his group got to the ninth hole, the defendant was sitting on a bench nearby; the boys exchanged pleasantries with him.
After the victim's first friend "teed off" at the ninth hole, the defendant offered to let the boys use his new golf club to hit their shot; the victim was the last to tee off, after his friends had moved up the course to retrieve their golf balls. Now alone with the victim, the defendant offered to let him use his golf club, telling the victim that he wanted to show him how to hit the ball a certain way. While doing that, the defendant "poked" the victim on the arm with his finger, asking the victim "how long [he] had been playing golf and if [his] balls had dropped." The victim testified that it was clear to him that, when the defendant instructed him to rest his golf club "on your balls" before taking his shot, the defendant meant that the victim should place the club "in [his] genital area." After hitting his golf ball off the tee for a third time, the victim "noticed that it really wasn't the best situation" and felt "uncomfortable" in the defendant's presence, "need[ing] to leave as soon as possible," so he went to catch up with his friends and retrieve the golf balls that he had hit.
Thereafter, the boys attempted to avoid the defendant, first, by leaving without finishing the ninth hole and going to the clubhouse for a snack and a drink. The victim did not realize that the defendant was sitting in the clubhouse; however, when he was returning from the restroom, he walked past the defendant's table. Without saying anything, the defendant handed him a slip of paper containing an electronic mail message (e-mail) address, telephone number, and the defendant's name with a note to call him.[6]
The victim and his friends then decided to leave the clubhouse and use the putting area until their ride arrived. After they encountered the defendant again, they moved to the other side of the clubhouse; their ride arrived ten minutes later. The boys were then taken to a local fast food restaurant, where the victim's father came and met him. The victim told his father about the encounter and his father called the local police, who arrived at the restaurant to speak with the victim.[7] Later that day, the victim went to the police department to speak with Detective James Lyman, a specialist in computer facilitated crimes.
Lyman testified that he created a new "undercover e-mail" account through the Web site yahoo.com. During the morning of May 6, 2009, posing as the victim, he initiated contact with the defendant, by sending an e-mail to the e-mail address listed on the note the defendant had given the victim at the golf course.[8] The subject line of the e-mail read, "It's me, Michael."[9] ,[10] The next day, at approximately 7 P.M., Lyman received a response from the defendant in the yahoo.com inbox.[11] For the next four days, Lyman conversed back and forth with the defendant by e-mail through the yahoo.com account[12] ; between May 7 and May 12, 2009, Lyman received thirty-seven e-mails in the yahoo.com inbox from the defendant.
In one e-mail sent from the defendant on May 9, 2009, he wrote, "if we get together again, maybe I could give you a [birthday] present. Smiley face. Do you have any photos of you that you could send me, BTW? I sort of remember what you look like, but it would be neat to see you again. But that's up to you, if you can. Ask me questions, too, to get to know me more if you want. You can ask anything and it's okay with me." After Lyman responded (as the victim) that he could get pictures of himself from his mother's computer, and asked for pictures from the defendant, the defendant responded, "My B day is September 23rd. Cool about pics. It would be nice to see you again. I can make some for you with my webcam, but I don't have any ready right now. Any suggestions on what you would like? LOL. Do you just live with your mom or is your dad around, too, BTW? I live alone with my cat right now. Her name is Sox, not after the Red Sox though. I just moved into a new place so still getting settled here."
Later on May 9, in response to some questions posed by Lyman, the defendant responded, "No wife. Don't want one. I just moved into a three-decker, and I have a cable and a forty-six]-inch TV. One cat. She's nice. You can ask more questions." A short time later, the defendant sent another e-mail in response to one sent by Lyman: "Like what stuff did you do on the last sleepover? Don't worry, I won't tell anyone. But I don't want to guess. My mind can wander at times. LOL. And, like, what videos, too? LOL. I'm guessing pornos. LOL. It would be neat if we could work it out that you come over sometime, but I don't want to get ahead of ourselves yet either. Paul."
Later in this same e-mail chain, the defendant sent an e-mail with an attachment containing two pictures-one of "a black and white cat sitting on a blue and white blanket on a light brown carpet with a white wall background," and another of "a male torso, naked, with a penis, in a bathtub, a white bathtub, with [a] portion of the bathtub filled with water." In his e-mail message the defendant wrote, "Do you have any naughty pics of yourself? LOL. Here's one of me sort of naughty. Hope you like. Smiley face. One of Sox too. LOL. And no way you're weird. Michael, I like you a lot and hope we can continue talking, maybe in your room where we can be more private too, if you like. Smiley face. Paul."[13] The last message from this same e-mail chain, sent on the morning of May 9, 2009, is from the defendant, who wrote: "And hope we can chat live sometime, but e-mail is cool too. I know, no names, but you could give me a letter, A or B, like that, and tell me details too. And you still didn't answer the question about your own hair down there. LOL. Talk to you soon. If you still have the note, you have my number. So you can call me too if you want. Not sure if you like. But hugs to you. Paul."
A new e-mail chain (with the subject line reading "Happy Mother's Day") was initiated on May 10, 2009, by Lyman because there was no further response from the defendant on the previous "It's me, Michael" e-mail chain. The defendant responded to this e-mail, "I have the camera on my phone for now, but that's all I have unless you come over and use my webcam. I would love to meet you again, but you know we have to be careful about that." Later he writes, "You can call me too. My number was on the note. Smiley face. Love, Paul." At 6:14 P.M.on May 10, after receiving no response from his three previously sent e-mails, the defendant wrote, "I want to come see you today, Michael. Unhappy face. Disappointed. Paul." After finally receiving a response, the defendant then wrote, "LOL, IDK-which is I don't know-if it was Internet or hotmail.com, but I miss you, and I got your messages now. Is there any way to see each other for real today? Paul." On May 12, 2009, Lyman sent an e-mail providing the name of the victim's middle school and that he is in sixth grade.
Based on the e-mail exchanges between May 7 and May 12, 2009, Lyman obtained a search warrant for the defendant's home. In the home, Lyman found a black and white cat, whom he believed to be "Sox," the cat in the photograph the defendant had sent; the carpet, wall color, and blanket in one of the bedrooms matched the colors and items in the picture with the cat the defendant had sent. In addition, a computer was set up next to the bathtub of the home.[14]
Based on the foregoing, we are satisfied that there was sufficient evidence for the judge, as fact finder, to have found that the defendant possessed the image of his naked self in a half-filled bathtub exposing his penis, and that he sent that picture as an attachment to an e-mail message intended for delivery to the victim, a minor, despite the fact that the person with whom the defendant was exchanging e-mail messages was actually Lyman. See Commonwealth v. Hall, 80 Mass. App. Ct. 317, 327-328 (2011). See also Commonwealth v. Dodgson, 80 Mass. App. Ct. 307, 311 (2011) (distribution of picture to minor of "naked erect penis in a private online conversation" considered "dissemination" for purposes of G. L. c. 272, §§ 29 and 31 ). Viewing this evidence in the light most favorable to the Commonwealth, and considering all the circumstances and making appropriate inferences, it is clear that the judge could have found beyond a reasonable doubt that the defendant possessed matter harmful to a minor that he intended to disseminate to the fourteen year old victim. See Hall, supra at 327, citing Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979).
Judgment affirmed.

The Commonwealth did not bring to trial a charge of failure to register as a sex offender (count 1), as the order denying the motion to dismiss this count was pending appeal at the time of trial; a nolle prosequi was filed on a charge of possession of child pornography (count 2).

In November, 2009, "harmful to minors" was defined as matter "obscene or, if taken as a whole, it (1) describes or represents nudity, sexual conduct or sexual excitement, so as to appeal predominantly to the prurient interest of minors; (2) is patently contrary to prevailing standards of adults in the county where the offense was committed as to suitable material for such minors; and (3) lacks serious literary, artistic, political or scientific value for minors." G. L. c. 272, § 31, as amended by St. 1982, c. 603, § 6. The definition of "matter" includes "pictures." G. L. c. 272, § 31, as amended by St. 2002, c. 161, § 1.

In November, 2009, as now, a "minor" was defined as "a person under eighteen years of age." G. L. c. 272, § 31.

On April 11, 2011, the opening words of G. L. c. 272, § 28, were amended to now read, "Whoever purposefully disseminates to a person he knows or believes to be a minor any matter harmful to minors, as defined in section [thirty-one], knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to a person he knows or believes to be a minor shall be punished ..." (emphasis supplied). G. L. c. 272, § 28, as amended by St. 2011, c. 9, § 19.

The note was admitted as an exhibit at trial.

Outside the restaurant the victim identified the defendant's mugshot, which was displayed on the computer screen in the responding officer's car.

This newly created e-mail address was for the exclusive use in this case and for the sole purpose of communicating with the defendant at the e-mail address listed in the note.

A pseudonym.

The content of the e-mail sent was: "Hey, I hope you remember me. You said hi when I was golfing with my friends near Worcester. I just got my [com]puter back from being grounded. Heading off to school now. I will be back later. Smiley face. Michael."

The response read: "Cool. Neat to hear from you. And, yes, I remember you. We teed off at the ninth together after your friends went ahead some, right? Hope you have a good day at school. Write me back when you can. Sucks that you were grounded. I think I'd go nuts without [a] [com]puter. LOL. TTYS. Paul."

Lyman read each of these e-mails aloud during his testimony, and a copy of each was admitted in evidence.

The defendant sent another message relating to the pictures: "That was not a full hard pic, as I guess you could tell, but I was in the bathtub at the time. LOL."

The defendant answered the door in a robe and he was wet.